## DAVID U. BROWN *vs.* REBECCA SOMERVILLE.

On the *second* appeal in a case whatever principles were settled on the *first* appeal must govern the appellate court, unless the record shows a materially different case.

A pending attachment may be pleaded in *abatement* to a suit against the garnishee by the defendant in the attachment, but to constitute a *bar* to such a suit there must be judgment of condemnation followed by *execution executed,* or *payment* or *satisfaction.*

The act of 1715, ch. 40, sec. 7, places *credits* upon the same footing as *goods and chattels,* and permits the garnishee to plead the attachment in *bar* only when it has proceeded to judgment *and execution had and made.*

The words of an act may be disregarded where that is necessary to arrive at the intention of the law-makers, but not where the act admits of only one interpretation.

The defendant in the attachment may sue the garnishee on the attached *chose* at any time before payment of the judgment of condemnation, or execution executed thereon, and recover, unless the garnishee pleads the pending attachment in *abatement.*

The judgment in attachment does not *extinguish* the garnishee's *debt* to the defendant; the debt is attached as something belonging to the defendant and not as a debt due by the garnishee to the plaintiff, and the defendant has an interest in having that credit applied to the payment in whole or *pro tanto* of his debt to the plaintiff.

An attachment without satisfaction will not, of itself, prevent the plaintiff in the attachment from resorting to his original debtor.

A judgment of condemnation was rendered against a garnishee for $10,000, and before execution issued thereon he was sued by the holder of a promissory note for $822.19, which was one of the *attached choses,* he being the maker thereof. Pending this suit he *purchased* the judgment from the plaintiff in the attachment for $2300. HELD :

That this purchase was no defence to the suit, because the *whole debt* was not paid; as between the plaintiff in the attachment and the garnishee the judgment was closed, but the defendant in the attachment had an interest in having the *whole debt* paid, and the garnishee occupies no better position than if any *other person* had purchased the judgment who could have compelled the garnishee to pay the whole debt, or after exhausting his remedy on the judgment have resorted to the defendant in the attachment for the balance.

The attachment process has always been strictly construed, and required to be pursued according to the statute.

APPEAL from Baltimore County court.

This is the *second* appeal in this case, the first being reported in 5 *Gill*, 399. The action was *assumpsit* by the appellant against the appellee, docketed by consent, at November term 1844, upon a promissory note for $822.19, drawn by the appellee in favor of W. T. Somerville or order, dated the 1st of November 1841, and payable in two years and six months, and endorsed by the payee to the appellant. Plea, *non assumpsit*.

*Exception.* The facts of the case necessary to be stated are briefly these: In October 1841, the defendant, Rebecca Somerville, being indebted in her own name, and as executrix of her husband, to Charles Tiernan, surviving partner of Luke Tiernan & Sons, in a debt of $5000, gave him her five notes for $1000 each, payable, respectively, in one, two, three, four and five years, all drawn to the order of W. T. Somerville and by him endorsed. A few days after these notes were given an attachment on a judgment for $10,000, against Charles Tiernan, was sued out of Baltimore county court by the Bank of New Orleans, the plaintiff therein, against the goods, chattels and credits of said Charles Tiernan, and the same was accordingly, on the 2nd of November 1841, laid in the hands of Rebecca Somerville and W. T. Somerville, the drawer and endorser of these notes. Charles Tiernan continued the holder and owner of these notes until May or June 1842, when he transferred the note of $1000 first due to William H. Tiernan to pay certain of his creditors, and the other three to Thomas Penny, also his creditor, and shortly *thereafter* applied for the benefit of the insolvent laws.

Brown *vs.* Somerville.

In June or July 1842, William H. Tiernan presented the note of $1000 so transferred to him to Mrs. Somerville, who refused to pay it on the ground of the attachment; and on the 20th of October 1842, when the note was about to mature, she paid, through her agent, William T. Somerville, $100, and for the balance gave two other notes, one at sixty days for $150 to Mr. Nelson, and the other, (being the note sued on,) for $822.19, dated back November 1st, 1841, to correspond with the original note of $1000, and by agreement with William H. Tiernan and the said agent of Mrs. Somerville made subject to the original attachment.

On the 27th of January 1843, as appears by the docket entries, judgment of condemnation was rendered in the attachment case on verdict against the garnishees for $10,000, with interest, "subject to agreement filed," *viz:* "This judgment to be released on payment of $500 on the 1st of May, 1843, of $500 on the 1st of November 1843, of $822.19 on the 1st of May 1844, of $1000 on the first days of November 1844, 1845, 1846, respectively, and of $2000 on the 1st of November 1847, with a stay on the several amounts as they become due." It was also proved that Charles Tiernan, the attachment debtor, employed counsel to defend this attachment suit, and that the verdict therein was taken and rendered by consent of parties to the suit and in pursuance of the agreement set forth in the judgment.

On the 11th of November 1843, the note of $822.19 having thus been in the possession of William H. Tiernan, came to the hands of the plaintiff in this case, David U. Brown, through one Smith, *bona fide* and for value. In December 1847, the Bank of New Orleans having failed, the judgment in attachment was sold in New Orleans and bought by the defendant, Mrs. Somerville, for $2300, and paid for by her, and the bank thereupon handed back to her three notes, one for $1000, and two for $500 each, which had been originally given by her to Charles Tiernan in 1841, and after the attachment passed by him to Penny. The bank came into possession of these notes by intervening and claiming them of Penny; who attempted to sue the endorser thereof, the bank claiming them

as having been bound by the attachment in Baltimore, and that claim being sustained by the court in New Orleans. Upon these facts the plaintiff asked instructions in substance, as follows:

1st. If the jury find the note was made by the defendant, endorsed by the payee, and passed to the plaintiff *bona fide* and for value, and that it was made and delivered by defendant to or for the benefit of William H. Tiernan after the attachment offered in evidence was laid in her hands, and that the original note of $1000 had been passed to said William, as stated in the testimony, then the plaintiff is entitled to recover, notwithstanding the jury may find, that William H. Tiernan agreed with the endorser, William T. Somerville, that said note should be subject to said attachment; provided they also find that the note for $1000, mentioned in the testimony, was passed away to William H. Tiernan for the consideration mentioned in the testimony, before Charles Tiernan applied for the benefit of the insolvent laws.

2nd. If the jury believe the judgment in the attachment was rendered on an agreement for a judgment, or admitting an amount as due by the garnishee in the terms of the agreement, made part of the attachment proceedings, and that thereupon the verdict by consent was taken upon which the said judgment was rendered, and all the facts put in the preceding prayer, then the plaintiff is entitled to recover.

3rd. If the jury find all the facts set forth in the preceding prayers, and that the attachment judgment was bought by the defendant for $2300, in December 1847, and that in consideration of that payment, the plaintiff in attachment surrendered to her three of the notes attached in her hands, two of $500 each and one of $1000, and that these notes were of those mentioned in the testimony as passed to Penny, and shall believe they were so passed, then the plaintiff is entitled to recover, if the jury find that said notes, with interest to the period of the purchase of the judgment, amounted to $2300.

The defendant then asked an instruction, that if the jury find that Mrs. Somerville, in October 1841, settled with Charles Tiernan for all liabilities of herself and of her deceased husband,

by giving to him the notes specified in his receipt; and that in November, immediately thereafter, the attachment of the bank given in evidence was laid in her hands as garnishee; and that Charles Tiernan, being still the holder of the original note for $1000, employed the counsel who appeared to defend the attachment cause, in January 1842; and that he, in May 1842, gave said note to William H. Tiernan, to collect and apply its proceeds to certain of his creditors; and that in October 1842, the note sued on in this case was made and given by defendant, through her agent, William T. Somerville, to William H. Tiernan, in part renewal of said $1000 note and expressly subject to the attachment cause, which was then undecided; and that judgment was given on the 27th of January 1843, in said attachment cause, against defendant, as garnishee, for the amount therein stated, then the plaintiff is not entitled to recover.

The court (FRICK, C. J., and LE GRAND, A. J.,) refused the plaintiff's prayers and granted that of the defendant. To this ruling the plaintiff excepted, and the verdict and judgment being against him, appealed.

The cause was argued before ECCLESTON, TUCK and MASON, J.

*Isaac N. Steele* and *Chas. F. Mayer* for the appellant, argued:

1st. Even if this court shall adhere to the decision given in the former hearing of this case, the appellant is entitled to judgment on the note shown to have been passed from Tiernan before he applied for the benefit of the insolvent laws, and as a *new note* (cleared of all possible bearing of the attachment) issued by the appellee *after the attachment was laid.* *Drake on Attach., sec.* 219. 5 *Gill,* 399. *Story on Prom. Notes, secs.* 91, 181. 1 *Md. Rep.,* 516, *Hunter vs. Van Bomhorst & Co.*

2nd. The agreement, (even if it existed,) that the new note should be subjected to the attachment, cannot affect the rights of the appellant, an innocent holder, without notice of any such equity attending the note. Besides which, that pretended stipulation, being merely oral, cannot control the writ-

ten terms of the note and is incompetent testimony, or ought not to have any effect given to it by the court. *Chitty on Bills,* 162. 3 *Camp.,* 57, *Hoare vs. Graham.* 1 *Starkie's Rep.,* 361, *Rawson vs. Walker.*

3rd. The attachment judgment has no effect, because it was, as is *now shown,* obtained on a verdict *by consent.* The only operative effect of a judgment rests upon its *coercive* and *involuntary* character. It can bind only parties and privies. The plaintiff in this case was not a *privy* with Charles Tiernan, and did not even obtain this note from *William H. Tiernan.* There must be nothing of the *volunteer* on the part of the garnishee in obtaining the judgment of condemnation, if he wishes it to be a *protection* to him against a suit by the defendant in the attachment. For these positions, see *Act of 1715, ch. 40, sec. 3.* 5 *Gill,* 399. 1 *H. & G.,* 492, *Taylor vs. Phelps.* 4 *G. & J.,* 414, *Charlotte Hall School vs. Greenwell.* 4 *Rawle,* 100, *Coates vs. Roberts.* 2 *Kent's Com.,* 109. 22 *Ala.,* 767, *Winston vs. Westfeldt.* 1 *Greenlf. on Ev., secs.* 529, 530, 536. 10 *Eng. C. L. Rep.,* 345, *Barough vs. White.* 16 *Do.,* 220, *Shaw vs. Broom.* 20 *Do.,* 351, *Beauchamp vs. Parry.*

4th. The settlement by Mrs. Somerville of the attachment judgment, by an amount which left her exonerated from the amount of this claim, debars her all benefit of the attachment condemnation, whether the defence on that ground be an equitable or legal one. A garnishee is *a trustee,* and when any party, acting in a fiduciary capacity, compromises a claim, he does so for the benefit of the estate, the *cestui que trust,* and not for his own benefit. 3 *H. & J.,* 99, *Turner vs. Bouchell.* 12 *G. & J.,* 36, *Hall vs. Creswell.*

5th. The attachment judgment is not of any effect, and (even putting out of view all the grounds now on the new testimony presented) cannot avail as a *bar* to this claim, because not followed by execution and satisfaction thereon. A pending attachment may be pleaded by the garnishee in *abatement* of a suit against him by the defendant in the attachment, but to constitute a *bar,* there must be judgment and payment or satisfaction thereof, or *execution executed. Act of* 1715, *ch.*

57      v. 8

40, *sec.* 3.　13 *Pick.*, 511, *Meriam vs. Rundlett.*　8 *Georgia,*
549, *Brannon vs. Noble.*　3 *H. & McH.*, 594, *Davidson vs.*
*Beatty.*　2 *H. & J.*, 96, *Owings vs. Norwood.*　1 *Saund.*
*Rep.*, 67, *Turbill's case, and note.*　5 *Eng. C. L. Rep.*,
160, *Wetter vs. Rucker.*　2 *Watts & Sergt.*, 210, *Lowry vs.*
*Lumbermens Bank.*　1 *Greenlf. on Ev.*, *secs.* 531, 533.　2
*Kent's Com.*, 388.

6th.　The decision of the Court of Appeals in the former
case will be very strictly construed, and limited to the facts
literally as the case then exhibited them.　Such a construction
is but just of positions that so oppressively affect commercial
interests, and so contravene the negotiableness of promissory
notes.　And we claim that this decision will be reconsidered
by the court if it shall be necessary to do so in order to the
justice of this case, and to restore our law to the consistency
with the faith of the doctrine, which allows a *negotiable prom-*
*issory note to be negotiated.*　Drake *on Attach.*, *secs.* 577,
599.　1 *H. & J.*, 536, *Steuart vs. West.*　5 *New Hamp.*,
502, *Stone vs. Dean.*　11 *Verm.*, 309, *Hinsdill vs. Safford.*
13 *Do.*, 341, *Hutchinson vs. Evans.*　4 *Dallas*, 47, *Ludlow vs.*
*Bingham.*　2 *Bailey*, 441, *Gaffney vs. Bradford.*　14 *La.*
*Rep.*, 449, *Sheets vs. Culver* *Ibid.*, 511, *Kimball vs. Plant,*
*et al.*　9 *Iredell*, 116, *Myers vs. Beeman.*　11 *Do.*, 564,
*Ormond vs. Moye.*　3 *Conn.*, 27, *Enos vs. Tuttle.*　12 *Ala.*,
96, *Mills vs. Stewart.*　22 *Do.*, 760, *Winston vs. Westfeldt.*

*William B. Perine* and *William H. Norris* for the appel-
lee, argued:

1st.　That no error can be imputed to an inferior tribunal in
having obeyed the principles established by the Court of Ap-
peals on a preceding appeal in the same case.　1 *Md. Rep.*,
324, *Thomas vs. Doub.* *Ibid.*, 394, *Young vs. Frost.*　3
*Do.*, 188, *Emory vs. Owings.*　4 *Do.*, 164, *Hammond vs.*
*Inloes.*　6 *Do.*, 97, *Preston vs. Leighton.* *Ibid.*, 231, *Mit-*
*chell vs. Mitchell.*

2nd.　The Court of Appeals on the former appeal, 5 *Gill,*
399, established two principles, either of which entirely sus-
tains the defendant's prayer.　1st.　That a promissory note is

a *credit* in view of our attachment laws, and its negotiability is, by force of the attachment, arrested, if the defendant in the attachment is the holder and owner of note at the time the attachment is laid in the hands of the maker, and no action can be maintained on the note or the debt it represents by a subsequent endorsee or transferee, though he receive it *bona fide* for value and without actual notice of the attachment, provided a judgment is fairly obtained in the attachment suit to the extent of the debt or credit attached. And this principle was properly ruled. The case has been treated throughout as if it was an attachment to compel appearance, whereas it is an attachment by way of *execution* on *final judgment*. In England money due on a bond or contract may be attached before the day of payment. *Bac. Abr.*, title, *Customs of London, letter (H.)* 2 *Comyn's Digest, title, Attachment, letter (C.)* The court in the former case said negotiable notes were attachable upon the ground that a subsequent statute could modify a prior one, and the statute of Anne could be and was modified by our attachment laws. The case of *Steuart vs. West*, 1 *H. & J.*, 536, is the very case at bar. The county court in that case was *divided* as to the question, whether a promissory note was attachable *at all*, and the General Court upon appeal decided that it was *attachable*. Settling this principle the court, in 5 *Gill*, say, it settles the principle of this case, because the law of *executions* is superinduced upon this attachment *on judgment*. It gives a *lien*, and the moment this is done there can be no transfer to defeat the claim of the execution creditor. *Act of* 1715, *ch.* 40, *sec.* 7. In an attachment by way of execution no *capias* clause is inserted as in an attachment to compel appearance, but it is in itself an execution, and is to be governed by all the laws relating to executions. 7 *Md. Rep.*, 102, *Griffith vs. Etna Fire Ins. Co. Ibid.*, 404, *Boyd vs. Talbott.* 3 *Gill*, 241, *Baldwin vs. Wright, et al.* See also on this point the *Acts of* 1824, *ch.* 74, *sec.* 1, and 1834, *ch.* 189. 7 *Md. Rep.*, 368, *Martin vs. Martin.* 16 *Verm.*, 594, *Chase vs. Haughton.* 13 *Mass.*, 153, *Hull vs. Blake.* 16 *Do.*, 304, *Parker, et al., vs. Danforth.* 4 *Md. Rep.*, 280, *Peacock vs. Pembroke.*

But it is said this doctrine interferes with the commercial law respecting the negotiability of promissory notes. But this commercial law is made for *makers* as well as *takers* of notes. An alteration in a note protects the maker or acceptor, (25 *Eng. Law & Eq. Rep.*, 125, *Burchfield vs. Moore,*) and the law visits the consequence of notice in cases where the parties could have no *actual notice.* 2 *Rand.*, 93, *Newman vs. Chapman.* 1 *Story's Eq.*, secs. 405, 406.

3rd. The other principle decided on the former appeal is, that if no objections are interposed by the parties owning the note or debt during the progress of the attachment suit, having notice of the attachment and defending it, and the garnishee has had judgment given against him by a court of competent jurisdiction, because the garnishee could not deny the debt of the defendant in the attachment, nor the fact of the garnishee's indebtedness to the defendant in the attachment, then such judgment of condemnation is a perfect bar and protection to the garnishee against any suit by a party on any part of the debt attached, deriving title under the attachment debtor subsequently to the levy of the attachment. And this principle was properly ruled. 13 *Mass.* 153, *Hull vs. Blake.* The first objection to this judgment is, that it was rendered by *consent.* But how does this affect the case? Mrs. Somerville could not deny that she owed the money and there was nothing left for her to do except to give judgment. She was not bound to resist the judgment to the last. But besides this the same proof and the same judgment, the docket of entries of which showed it was given by consent upon terms filed, was in the *former record,* and the only new proof is now the oral declaration of the same fact which was apparent from the docket entries which were before the court on the former appeal. Another objection is, that the judgment is not a bar unless followed by payment or *execution executed.* The English decisions upon the Custom of London are cited to sustain this position. The earlier English cases show that the judges of the common law courts treated with contempt and constantly endeavored to get rid of these attachments, these judgments of the Lord Mayor's Court. They would not permit

this *Pie Poudre* court to interfere with the higher courts of common law, and they even went so far as to deny that a pending attachment could be even pleaded in *abatement.* 1 *Saund. Rep.*, 67, *Turbill's case*, *note* 1. 1 *Eng. C. L. Rep.*, 311, *Smidt vs. Ogle.* 5 *Do.*, 164, *Wetter vs. Rucker.* These were decisions in *Lord Holt's* time. The modern English decisions, however, have more favored these attachments. *Drake on Attach.*, sec. 729. But the answer to all these cases is, that our attachment laws have modified and enlarged the English law upon this subject. The custom of London was exclusively a system to *compel appearance.* They had no such thing as an attachment by *way of execution.* Our State never intended, by its various attachment laws, merely to incorporate the narrow system of the custom of London, but these various laws have made an attachment on final judgment an *execution* of itself, the writ by which the fruits of his judgment are secured to the plaintiff in the attachment. Such a system is not to be watched, and scanned, and defeated wherever it can be, but should receive a liberal construction from the courts. Now as to the consequences: The guiding principle that pervades our attachment system is, that the garnishee ought not to be placed in any worse position than if the defendant in the attachment had himself recovered the judgment against him. *Drake on Attach.*, sec. 415. They make an assignment in law to the plaintiff in the attachment of the debt due by the garnishee to the defendant. The attachment is a proceeding *in rem* or in the nature of one, and fixes the debt in favor of the attaching creditor. 13 *Pet.*, 151, *Wallace vs. McConnell.* 6 *H. & J.*, 23, *Tongue vs. Morton.* 2 *Md. Rep.*, 451, *Wright vs. Wright.* 2 *How.*, 338, *Grignon vs. Astor.* 9 *Do.*, 348, *Boswell vs. Otis.* 3 *Wheat.*, 312, *Gelston vs. Hoyt.* Our attachment laws permit an attachment to be laid in the plaintiff's own hands, and how is an *execution* to be got in such a case as that? For these reasons we insist that no *execution* upon the attachment judgment was necessary to render it a *bar* to a suit against the garnishee by the defendant in the attachment.

4th. The proof now shows, that the attachment judgment

has been purchased by Mrs. Somerville, the garnishee in the attachment case. But how does this affect the case? She bought the judgment and of course is entitled to the benefit of her purchase. It is said the garnishee is a *trustee.* But who is the *cestui que trust?* It must be Charles Tiernan, or his permanent trustee in insolvency, or the bank, surely not this *appellant.* It is error to suppose, that if a party debtor pays his judgment debt by a less sum than the whole, he thereby gives to the holder of an improperly transferred security, which belonged of right to the judgment creditor, a title and claim which such holder would not have if the debtor had paid the judgment in full.

(The argument in regard to the effect of Charles Tiernan's application for the benefit of the insolvent laws, and as to the *form* of the prayers in the case, need not be stated.)

Tuck, J., delivered the opinion of this court.

Whatever principles were settled on the former appeal must govern this court on the present, unless the record shows a materially different case. This is the established doctrine, as shown by the authorities on the appellee's brief.

After a careful examination we can discover no such difference, except that it now appears that the note was passed by Charles Tiernan *before* his application under the insolvent laws, whereas the decision of one of the points on the former trial was placed on the ground that such transfer could not be made after his application; and it is now proved that the judgment of condemnation against the defendant has never been fully paid, but that, since the former trial, she has become the purchaser thereof for $2300, the debt being largely more than that amount, and the sum now claimed by the appellant.

It is supposed that this record shows, as an additional fact not proved in the other case, that the judgment of condemnation was entered by agreement of the parties. But we think it manifest that this fact was known to the court on the first appeal. The same copy of the docket entries is set out in both records, and the parol proof now offered, that the agreement was made, does not make a new matter of that which

was before established. The point is, was the same fact proved, not whether the evidence of the fact is the same or different. The court unquestionably dealt with the judgment, as we must, as a valid proceeding.

There being no question raised as to the validity of the transfer of the note by Charles Tiernan, in view of the insolvent laws, the additional evidence in that behalf need not be noticed. The only subjects, therefore, for our consideration are, whether it was necessary for Mrs. Somerville to have shown that the judgment in attachment had been followed by execution executed, or satisfaction, as a complete defence to this action; and whether the part payment of the judgment, by the purchase thereof, can enure to her benefit, she having, by that purchase, gotten rid of a larger portion of her judgment debt to the bank than will pay the amount claimed in this suit.

The first of these propositions was not decided on the former appeal. It does not appear by the statements and points filed by the counsel, or by the reporter's notes of the argument, to have been adverted to, or in any manner brought to the notice of the court. The reported case shows very clearly that, with the exception of a point arising under the insolvent laws, the only question discussed in the opinions filed was, whether the note in suit could be attached, which did not necessarily involve the point now made on this appeal. We consider ourselves, therefore, at liberty to treat it as a case of first impression in this State, depending upon the attachment laws, and the decisions in England and in this country.

The words of the act of 1715, ch. 40, sec. 7, admit of no controversy as we think. They provide that the "condemnation *and execution* of such goods, chattels *and credits,* of the said garnishee, *had and made,* shall be sufficient and pleadable in bar by the garnishee in any action against him, by the defendant, for the same." It is not pretended that the judgment of condemnation of lands or goods, without execution, would bar the defendant's suit against the garnishee; but it is said, that in a case of attachment against credits in the hands of the garnishee, the judgment operates as a general judgment against him, binds his property like any judgment *in personam,*

and may be made by execution levied on any of his property. It must be conceded that this view applies to attachments such as the one relied upon here, and has no force whatever where property is taken under the writ; and that, therefore, the two kinds of process might well have been placed on a different footing, by making the condemnation, where credits only are attached, a bar to the other suit. But if the legislature has employed language embracing goods, chattels and credits, in the same sentence, dealing with each by a proceeding *in rem,* · from the writ of attachment to the judgment of condemnation, which of itself implies that the thing attached, whether chattel or credit, is the subject of the judgment, and protects the garnishee only when the attachment case has proceeded to judgment and *execution, had and made,* we cannot give the language a construction different from its plain meaning. The words of an act may be disregarded when that is necessary to arrive at the intention of the law makers, but not where the act admits of only one interpretation. Our attachment system was derived from that of England, and the words now under consideration, as they stand in the act, are in conformity with the decisions there, before and since its passage. We must suppose that the act was framed with reference to that system, and when the operation and effect of this process are considered, it will appear, we think, to be in conformity with the distinction between judgments *in rem* and *in personam.* If the judgment operated as an extinguishment of the garnishee's indebtment to the defendant in the attachment suit, it might be relied upon in bar as a former recovery. But this is not so. The credit is attached as something belonging to the defendant, not as a debt due by the garnishee to the plaintiff, and the defendant has an interest in that credit being applied to the payment in whole, or *pro tanto,* of his debt to the plaintiff. No distinction appears·to have been recognised between credits and specific property. All alike are made the subject of condemnation, and are dealt with in the same manner. The condemnation of the thing attached to the purposes of that suit, and its application to the payment of the defendant's debt to the plaintiff, is considered as made when an execution has

issued and been executed, according to the law of England, or by either payment or execution executed, according to the decisions in the States in which the law of attachment has been introduced, execution being considered only as a mode of enforcing payment. At any time before such application has been made the defendant may sue his debtor, the garnishee, on the attached *chose*, and recover, unless he pleads the pending attachment in abatement. If it has progressed to judgment and payment, or execution executed, this constitutes a defence in bar.

It will be seen that this view of the law does no injustice to any of the parties, if they adopt the proper mode of proceeding. The plaintiff in the attachment cannot complain if, having neglected to prosecute the remedy of his choice, according to the exigency of that process, he ultimately loses its benefit; and the garnishee incurs no risk of a payment to both his own creditor and the plaintiff in the attachment, because, as we have seen, he may, in one condition of the attachment case, make it the ground of abating the defendant's suit against him, and in the other aspect may defeat it altogether. For the law of England on this subject, see 1 *Saund. Rep.*, 67, *Turbill's case. Comyn's Digest, Attach. H. Locke on Attach.*, (79 *Law Lib.*) *Magrath vs. Hardy*, 4 *Bing. N. C.*, 782. *Wetter vs. Rucker*, 1 *Brod. & Bing.*, 491.

In Maryland we have no reported adjudications on this part of the law; nor are we aware that any cases have occurred at *nisi prius* from which we can learn the construction of the act of Assembly by our courts. In *Hinkley on Attachment*, it is said, that it is not the custom to take execution merely for the purpose of arming the garnishee with a defence; but he asks, "if the garnishee pays the judgment without execution, may he not plead the judgment and satisfaction, with the like benefit, as he might the judgment and execution?" We agree with the author that " it is reasonable that he should, inasmuch as execution is only a means of obtaining satisfaction." Those views are in accordance with the New York and Pennsylvania cases, where the point has been adjudicated. *Embree vs. Hanna*, 5 *Johns.*, 101. *Irvine vs. Lumbermens Bank*, 2 *Watts &*

*Sergt.,* 190.  *Ib.,* 210.  In the latter of these cases, (2 *Watts & Sergt.,* 214,) where a judgment of condemnation had been entered, but no satisfaction or execution, the court said: "To entitle a garnishee to a plea in bar, it must appear that he has been compelled to pay the money attached in his hands, or, what is the same thing, that an execution has been executed by seizure and levy on *his* property." And in 2 *Watts & Sergt.,* 208, the law is very clearly stated, as follows: "If after a foreign attachment has been issued, and been executed in the hands of the garnishee, the original debtor sues the garnishee for the debt, he may plead the attachment in abatement.  But if the plaintiff in the attachment has obtained judgment against the garnishee, and received the money, or execution has been executed, and the original creditor shall afterwards sue the garnishee for the debt, he may plead the condemnation in the foreign attachment, and this will be an effectual bar for the amount.  If the judgment in the attachment is equal to, or exceeds the amount demanded from the garnishee on the original debt, it is a flat bar; if for less, it is a bar *pro tanto* only.  And the distinction between pleas in abatement and in bar is not technical, but necessary to prevent injustice.  When pleaded in abatement, after the disability is removed by disproving the debt, as may be the case, the plaintiff may renew his suit; but if pleadable in bar this cannot be, and the plaintiff may be exposed to have the claim of the attaching creditors defalked, although it may be afterwards disproved, and the garnishee may be allowed for a debt which he may fail to pay.  The plaintiff may be defalked and afterwards compelled to pay the attaching creditors the amount of their debts; for an attachment without satisfaction would not, of itself, prevent them from resorting to their original debtor." It is scarcely necessary to observe that the same principles apply to cases of attachment on judgment, authorised by the act of 1715, ch. 40, as to foreign attachments.  This doctrine has been sanctioned by the Supreme Court, in the case of *Wallace vs. McConnell,* 13 *Peters,* 136, where the maker of a note, in an action by the payee, pleaded that *after* the commencement of the suit on the note, the debt

had been attached by a creditor of the payee, and a judgment of condemnation entered, with a stay of execution, and the court ruled, on demurrer to the plea, that it was not a defence, because the attachment case was commenced after the suit was brought on the note; that if the attachment had been conducted to a conclusion, and the money recovered of the defendant, before the commencement of the suit, there could be no doubt that it might have been set up as a payment upon the note in question; and if the attachment was pending when suit was instituted on the note, it might have been pleaded in abatement, as necessary to the protection of the garnishee, the defendant in the suit on the note.

We are not aware of any case in which the judgment of condemnation has been held sufficient, of itself, to bar the action against the garnishee, except *Hull vs. Blake*, 13 *Mass.*, 153. But there the judgment of condemnation in the court of Georgia, relied on by the defendant, stated that the proceedings would, according to the law of that State, discharge the garnishee when sued by his original creditor.

In the case before us it appears that the debt was not paid, nor had an execution been issued and levied before this action was commenced. As we understand the law, and not one case to the contrary has been shown, the attachment cause was a pending proceeding and might have been pleaded in abatement, but could not be relied on in bar of the action, which brings us to consider the effect of the purchase, by the defendant, of the judgment against herself in 1847, after the suit was commenced.

If the defendant relies on this fact as a payment it cannot have the effect of barring the action, because she has not paid the whole debt, though, as between the bank and herself, the judgment is closed. The owner of the *chose*, however, has an interest in having the whole debt paid, because "an attachment without satisfaction would not, of itself, prevent the plaintiff from resorting to his original debtor." 2 *Watts & Sergt.*, 209. And for all the purposes of this case we must consider the present appellant as occupying the situation of Tiernan, whose debt was attached in Mrs. Somerville's hands,

because she can make no defence on this record that she could not have set up against Tiernan. But then it is said, that the judgment is satisfied by the purchase. As between the parties to the purchase it is. But, as to the appellant or Tiernan, does the defendant occupy any better situation than if any other person had become the purchaser of the judgment and taken an assignment? We suppose not. It would enable garnishees to defeat the just rights of their creditors, holders of the credit attached, if by any arrangement of this kind the law could be turned from its course. According to the doctrines of the authorities referred to, any other purchaser of that judgment might have compelled her to pay the whole amount, or have proceeded against the Tiernans for the deficiency or balance due, after exhausting his remedy on the judgment of condemnation. It would be material in that state of case, to the Tiernans, that the claim of the bank, or its assignee, against them should be reduced by as much as could be recovered from Mrs. Somerville, and no arrangement by purchase or part payment, without their consent, could defeat that right; and we must bear in mind, that as Mrs. Somerville, by interposing the proceedings on the attachment, has subjected Brown to the predicament of the Tiernans, as if they were the now plaintiffs suing on the note, she cannot deny to him the benefit of any objection which they themselves could urge against her defence if they occupied his place as plaintiff against her.

The argument that this view of the question deprives the garnishee of the right to compromise with his creditor, the plaintiff in the attachment, which other debtors possess, proceeds, as we think, incorrectly, on the supposition that these judgments, before execution levied, have all the incidents of judgments *in personam.* If there be any hardship it is the fault of the statute by which, as was said in *Wetter vs. Rucker, 5 Eng. C. L. Rep.,* 165, " we are penned in." But when considered with reference to all its bearings it is not unreasonable that the law should be so. This attachment process seeks to dispose of a man's property without his consent, and in many cases without his knowledge, to the payment of his debts. It has always been strictly construed and required

to be pursued according to the statute. The garnishee is expected to pay all he owes his own creditor as far as may be ascertained by the judgment of condemnation. He is dealing with the property or funds of another whom he owes, from which he has no right to take any thing for his own or the plaintiff's benefit, to the prejudice of the defendant in the attachment. If payment be made *bona fide*, or if an execution be issued and levied on the garnishee's property, it repels all idea or presumption of collusion between the plaintiff and the garnishee, and the whole effect of the recovery against the garnishee enures to the benefit of his original creditor by having it applied to that creditor's own debt to the plaintiff. If this result be accomplished he cannot complain, but he has ground to object to any arrangement by which he may obtain a credit for less than the whole amount of the *chose* which his creditor has condemned to his use.

According to these views of the case, we are of opinion that the court properly refused the *first* and *second* prayers offered by the plaintiff; but erred in rejecting his *third* prayer, and also in granting the defendant's prayer.

*Judgment reversed and procedendo ordered.*