## THE FIRST NATIONAL BANK OF BALTIMORE *vs.* FRANCES CORNELIA TALIAFERRO.

*Usage—Evidence—Contract—Privity—Part only of Contract not Admissible—Negotiable securities—Measure of Damages.*

No custom or usage can ever be allowed to contravene the law.

No custom or usage prevailing among banks, bankers, and brokers can change the legal character of a power of attorney, and convert it into a totally different instrument, capable of effecting results never contemplated by the person executing it.

Certain blank powers of attorney executed by T. and by her delivered to V., merely authorized V. to sell certain registered Virginia consols belonging to T. and by her entrusted to V. for sale. In an action by T. against a bank in Baltimore, to which V. had hypothecated said consols as security for his own debt thereto, it was HELD:

That evidence was inadmissible to prove, that according to a custom or usage among banks, bankers, and brokers in Baltimore, registered Virginia consols were treated as negotiable, when accompanied by powers of attorney like those executed by T.

The defendant after proving that V. was out of the State of Maryland, and that the contract made by him with the defendant, when

First National Bank of Baltimore *vs.* Taliaferro.

he pledged these consols, was delivered up to him after the sale of the consols by the defendant, offered to prove the printed part of the contract under which V. hypothecated said securities. On objection it was HELD:

That said offer was properly refused,

1st. Because the contract made by V. and the defendant, without the privity or knowledge of T., could have no effect upon her right to recover from the defendant.

2nd. Because the offer was only to prove the printed part of the contract, which implied that there was some other part in writing, and the contract, if admissible at all, was only admissible in its entirety.

The securities hypothecated were certificates of indebtedness, with interest coupons attached, three of which coupons on each certificate were due at the time of the hypothecation. HELD:

1st. That the measure of damages was not limited to the value of the coupons overdue on the certificates at the time they were pledged, and such value as the certificates themselves would have had with the coupons not then due deducted.

2nd. That as the overdue coupons had not been detached, from those not due, the same rule of liability must apply to all of them, and the defendant could not be relieved from liability for the unmatured coupons on the ground, that being commercial paper payable to bearer and passing by delivery, the defendant acquired a good title to them by reason of its having taken them from V. for value before maturity.

APPEAL from the Superior Court of Baltimore City.

The case is stated in the opinion of the Court.

The cause was submitted to ROBINSON, IRVING, BRYAN, FOWLER, and McSHERRY, J.

*Alexander Preston, J. Alexander Preston,* and *Wm. A. Fisher,* for the appellant.

Evidence is admissible of the usage of a trade or locality to add a term to the contract, or a special mean-

ing to a word, and the parties are presumed to contract in reference to the usage. *Appleman vs. Fisher*, 34 *Md.*, 540.

In *Kraft vs. Fancher and Brown*, 44 *Md.*, on pages 215, 216, Judge ALVEY says: "It is now well settled, in the absence of any clear expression to the contrary, that he who deals in a particular market, must be taken to deal according to the custom of that market; and he who directs another to make a contract at a particular place, must be taken as intending that the contract may be made according to the usage of that place; and in this last case it is quite immaterial, that the principal himself is unacquainted with the usage or custom with reference to which his agent or factor may deal." In this case, Veazey certainly was the agent of Miss Taliaferro, "to sell, asign, transfer and set over," the certificates of indebtedness, upon which this case is brought; as in *Kraft vs. Fancher, &c.*, the appellee was dealing in a particular market. and accordingly must be taken to have dealt in such market, with reference to the custom in such market, and it is immaterial whether she knew of such custom or not.

Evidence of this usage, viz., that transfers of stock, of the character used, were considered by all bankers and brokers, as including the power to pledge, in the authority to sell, does not contradict the powers in any way, and is not inconsistent with or repugnant to the terms of the powers. The jury should determine whether a usage exists or not. *Burroughs vs. Langley*, 10 *Md.*, 248.

The only ground upon which evidence of a usage universal among persons dealing in the class of securities, in controversy could be rejected, is that the parol evidence contradicts or is repugnant to the express terms of the written contract. If however, the appellant proved, as was offered, by its counsel, the universal construction of the stock transfers, to include the power to pledge, in

the term sell, or in the other expressions, then this contract of the appellee must be taken to have been made with reference to such usage, and there is no repugnancy.

It is always permissible to show that an individual has a habit of using some expressions in a sense different from their ordinary signification. In like manner evidence is admissible of a general usage in a particular place and trade, to use certain expressions in a certain sense. It is an extension merely of a familiar principle, and if it be allowable to prove that one person uses certain words in an unusual manner, it would seem difficult to exclude evidence of a similar use by all persons in a trade. *Abbott's Trial Evidence*, 297; *Myers vs. Sarl*, 7 *Jurist, N. S.*, 97.

The appellant's second exception is practically included in its first exception, and the same reasons are urged in favor of this exception.

The third exception was to the ruling of the Court excluding the printed part of the note or obligation, which was given by Mr. Veazey to the Bank, at the time of the loan. The note was in the possession of Mr. Veazey, who was in Minnesota. Secondary evidence of the note was admissible. 1 *Taylor on Evidence*, sec. 441.

The appellant's fourth and last exception was taken for the purpose of reviewing the Court's instructions in reference to the measure of damages. The appellant and appellee offered conflicting prayers.

The true measure of damages should be the value of the overdue coupons at the time they were pledged by Veazey, together with such value as the bonds themselves would have, with the coupons not then due deducted.

The coupons on these bonds were negotiable, being in this form:

"The Commonwealth of Virginia will pay the bearer,
　　　dollars, 1st July, 18　　, interest due on bond
No.　．"

Coupons containing negotiable words pass from hand
to hand by mere delivery, as bank notes, vesting in the
holder an absolute title. *Burroughs on Public Securities*,
574; *Spooner vs. Holmes*, 102 *Mass.*, 503; *Mercer County
vs. Hacket*, 1 *Wall.*, 83; *Clark vs. Iowa City*, 20 *Wall.*, 583;
*Ketchum vs. Duncan*, 96 *U. S.*, 662.

This principle was also recognized in this State in the
case of the *Chesapeake and Ohio Canal vs. Blair*, 45 *Md.*,
102. In that case the Court say, on page 110:

"The bonds in question were coupon bonds, in the
usual form of such securities, and intended to pass by
nominal delivery, and which, if not destroyed, have the
qualities of negotiable paper. * * * * Such bonds
are treated as negotiable by the commercial usages and
understanding of the country, and their negotiable
quality has been fully recognized, not only by many of
the State Courts, but by the Supreme Court of the
United States, in repeated decisions, and being nego-
tiable, the rules applicable to negotiable paper apply to
them."

The coupons unmatured on these bonds, passed by de-
livery to the appellant, with all the privileges of ordi-
nary commercial paper. The title passing by delivery,
the holder for value, without notice, obtains an absolute
title, although the coupons may have been fraudulently
procured or even stolen from the true owner. *McGrath
vs. Van Stavoren*, 22 *Albany, L. J.*, 271; *County of Bates
vs. Winters*, 97 *U. S.*, 83; *New Orleans vs. Clark*, 95 *U.
S.*, 644; *Marcy vs. Township of Oswego*, 92 *U. S.*, 637;
*Smith vs. Sac County*, 11 *Wall.*, 139.

*J. S. T. Waters, Frederick W. Brune,* and *Stewart
Brown,* for the appellee.

McSherry, J., delivered the opinion of the Court.

This case is before us for the second time. On the first occasion Miss Taliaferro was the appellant; now the bank has appealed from the judgment recovered against it. On the former appeal it was decided that the blank powers of attorney signed by Miss Taliaferro, and delivered by her to I. Parker Veazey, merely authorized Veazey to *sell* the registered Virginia consols belonging to Miss Taliaferro, and entrusted by her to him for sale; and that by no possible construction could those powers of attorney be regarded. as conferring authority upon Veazey to *hypothecate* the consols to the bank as security for his own debt thereto. It was further held that the Bank had notice of Veazey's restricted authority, and that it consequently did not acquire any title to these securities against the rightful owner. 71 *Md.*, 200.

Upon the second trial, which resulted in the judgment from which this appeal was taken, the bank offered to prove by several witnesses that, according to a custom or usage amongst banks, bankers and brokers in Baltimore, registered Virginia consols were treated as negotiable, when accompanied by powers of attorney like those executed by Miss Taliaferro; but the Superior Court excluded the proffered testimony, and this ruling forms the ground of the first and second exceptions in the record now before us. There is no error in this ruling. Without considering the numerous objections urged against the admissibility of this testimony, it is sufficient to observe that no custom or usage can ever be allowed to contravene the law. If the powers of attorney were only powers to sell, and did not authorize Veazey to pledge the securities for his own debt, as was distinctly decided on the former appeal,—and that decision must govern us now, *Brown vs. Somerville*, 8 *Md.*, 444,— no custom or usage prevailing amongst banks, bankers and brokers could possibly change the legal charater of

the powers of attorney, and convert them into totally different instruments capable of effecting results never contemplated by the person who executed them. *Foley & Woodside vs. Mason & Son,* 6 *Md.,* 37; *Allen vs. Saint Louis Nat. Bank.* 120 *U. S.,* 20. In the case last cited, the Supreme Court, in disposing of a similar question observed, that the finding of the Circuit Court that the transactions between the factors and the plaintiff "were all according to the general usage of trade between banks and cotton factors at Saint Louis," could not aid the plaintiff, "because the usage attempted to be set up was not shown to have been known to the defendants or to other owners of cotton; *and because it was contrary to law.* in that it undertook to alter the nature of the contract between the factors and their principals, which authorizes them to sell, but not to pledge." The custom or usage referred to in the opinion filed on the first appeal in the case at bar, was a custom or usage in accord with the legal effect of the powers of attorney, and not one repugnant thereto.

The appellant, after showing that Veazey was out of the State of Maryland, and that the contract made by him with the bank, when he pledged these consols, was delivered up to him after the sale of the consols by the bank, offered to prove the *printed* part of the contract under which Veazey hypothecated Miss Taliaferro's securities. The refusal of the Court below to allow this to be done is the error complained of in the third bill of exception. This ruling was clearly correct. What possible effect could the contract made by Veazey and the bank, without Miss Taliaferro's privity or knowledge, have upon her right to recover from the bank? Veazey was not her agent to pledge the consols, but only to sell them; and nothing that he did in palpable breach of his restricted and limited authority—restricted and limited as the bank necessarily knew or had reason to

suspect—could in any way bind or estop Miss Taliaferro, or confer title to the securities upon the bank. But beyond this there is another insuperable objection. The offer was to prove only the *printed* part of the contract. This implies that there was some other part in writing. So the offer was to prove *part* of an entire contract. If admissible at all, it was only admissible in its entirety.

The fourth and last exception relates to the action of the Court in granting the prayers of the appellee, and in rejecting that of the appellant. The instructions granted, at the instance of the appellee, were clearly right. They need not be examined here, because they are fully supported by the opinion filed in this case on the former appeal. The prayer presented by the appellant, and rejected by the Superior Court, was properly rejected. It is in the following words: "If the jury shall find a verdict for the plaintiff, the measure of damages should be the value of the coupons overdue on the certificates of indebtedness at the time that they were pledged by I. Parker Veazey to the defendant, together with such value as the bonds themselves would have had with the coupons not then due deducted."

Each certificate of indebtedness, together with the coupons for the semi-annual interest thereon, was printed on a single sheet of paper. The coupons had not been detached from the certificates. Three of the coupons on each certificate were overdue when Veazey pledged the securities. Now, the prayer asked the Court to say to the jury, as the law of the case, that though Miss Taliaferro might recover from the bank the value which the certificates would have had if detached from the coupons, and the value of the three overdue coupons, because of the notice which the bank had of Veazey's want of power to pledge the certificates and overdue

coupons; yet the bank was not responsible to Miss Talia-
ferro for the value of the *unmatured* coupons, because
being commercial paper, payable to bearer, and passing
by delivery, the bank acquired a good title to them by
reason of its having taken them from Veazey for value
before maturity.    But did it take them without notice?
Upon what pririciple can the bank claim that it is an
innocent holder of coupons printed on the middle of a
sheet of paper, whilst it is not an innocent holder of the
certificate printed on one end of the same sheet, and not
an innocent holder of the remaining coupons printed on
the other end of the same sheet—all being undetached,
and all acquired at the same time, under a power of
attorney, which did not authorize the agent to pledge
any part of the securities?    The notice which affected
the bank was not confined to the certificates alone, but,
of necessity, extended to the securities, and to every
part of the securities, as they then were.    If the bank
knew, or was bound to know, that Veazey had no power
to pledge the certificates, it equally knew, or was bound
to know, that he had no power by pledging the certifi-
cates to confer title to the coupons which were printed
on the very same sheet of paper with the certificate.
His authority to deal with these securities was the power
of attorney, and that alone, and it gave him no more
right to pledge undetached and unmatured coupons than
it did to pledge the certificates themselves.    The cases
relied on by the appellant relate to detached coupons.
But no case that we are aware of has ever held that one
who takes a bond, and its undetached and unmatured
coupons under such circumstances as to charge him with
notice that the title to the security is not in the person
negotiating it, still acquires a good title against the
rightful owner, not to the bond itself, but, to the unma-
tured coupons attached to it, and that, too, simply
because those coupons are *unmatured.*

Finding no errors in the rulings of the Superior Court, its judgment will be affirmed.

*Judgment affirmed, with costs.*

(Decided 18th March, 1890.)