COLE & COVINGTON *v.* McNEILL.

*Simmons, C. J.*—1. One who was employed as a "woodsman," and whose duties as such included overlooking and superintending a large number of ordinary hands engaged in turpentine operations, who had authority to employ and discharge these hands, who also worked in a commissary in the capacity of a clerk, and who was employed for his skill in rendering services which obviously required mental and business capacity rather than the mere power to do manual toil, these services consisting much more largely of "head work" than of "hand work," was not a laborer entitled under section 1974 of the code to foreclose a lien as such, although in point of fact, and of necessity, he did in the performance of his duties a considerable amount of manual labor and often became physically fatigued.

2. Under the evidence contained in the record, the verdict was contrary to law, for the reason that the jury could not properly find that the plaintiff was a "laborer." *Oliver· v. Macon Hardware Co.*, 98 *Ga.* 249, and cases cited.        *Judgment reversed.*

July 13, 1896.  By two Justices.

Foreclosure of lien. Before Judge Sweat. Charlton superior court. October term, 1895.

E. H. McNeill made affidavit to foreclose a general lien as a laborer, upon the property of Cole & Covington. He alleged that he contracted with them to do manual labor for

the year 1894, as general laborer and hand, commissary keeper and woodsman on their turpentine farm, for which he was to receive $800.   By their counter-affidavit, defendants admitted that they were indebted to plaintiff $600 as woodsman, but denied that the services rendered by him constituted such manual labor as to entitle him to a lien. The jury found for the plaintiff, and defendants' motion for a new trial on the general grounds was overruled. Plaintiff testified, that his contract with defendants was that he was to receive $800 for the year 1894, during which year he was doing the work of a woodsman.   In different seasons of the year there are different occupations.   As a woodsman he counted boxes during the winter months, and while so doing he walked 25 or 30 miles some days.   It was necessary for him to do this, in order for him to discharge the duties he was sent out in the woods to do.   He rode to the woods and back, and while in the woods walked all the time during the boxing season.   He rode defendants' horse, took care of and curried him sometimes, but did not always do it; fed him every day at noon.   Upon being asked if it was a part of his duty as woodsman to look after the horse, he replied that he did it the whole time he was with them. While out in the woods he showed the box-cutters how to cut boxes; would take their tools and work with them himself; would take the axe and cut a few boxes; this was necessary in some instances, for the reason that he could not make the man understand otherwise.   He sometimes helped to load the wagons by rolling the barrels of crude turpentine therein to be hauled to the still.   He had something to do with scraping.   Placed the barrels for the men to pack the scrape in them.   Got into the barrels and packed them with his feet.   He did a "right smart" of that in the discharge of his duties as defendants' employee; was engaged in doing this kind of work since he commenced with them in 1885, and they knew he was doing it in 1894.   He had to issue rations from their commissary for the hands, about

75 in number.    He would be at the commissary at night
for several hours, after being on his feet all day.    Goods
for the commissary came in nearly every night, and he
helped push the boxes out and put them in the store and
open them.    He felt it his duty to do so under his contract
of employment.    Defendants have not paid him for 1894,
though payment has been demanded; and he has entirely
discharged his contract for that year.    He took down the
count of the number of boxes cut, and showed hands how
to cut the boxes.    This required skill, and he was employed
for his skill; not every man can do that kind of work.    He
saw that the hands did the work properly.    In the work of
cornering boxes he would go before the hands and show
one who did not understand how to do it; it did not require
much skill in this particular.    After this he went to where
the hands had been dipping and saw that all the trees had
been dipped and that all was well done.    This required
some skill.    A man that does not know anything about it
could not tell whether it was properly chipped or not.    He
did not take an axe of his own, but took the tools to show
the men how to do it; and the same way with the dippers
and the men who cornered the trees.    He was a kind of
overseer in the woods; had the right to discharge a man.
Could not say he spent five solid days in the year in loading
wagons; had to whenever it was necessary.    The duties he
performed in the commissary were not such as are usually
done by a clerk in a store.    All the labor he performed in
the commissary would not amount to more than two
months.    He had the right to employ negroes.    The woods
business was supervised almost entirely by him; he was
boss in the woods but was subject to defendants.    The
hands were employed and discharged by him for them.
He was subject to their orders, to do whatever they called
upon him to do.    The skill that is required to count the
boxes is to know how to count.

One of defendants testified:    Plaintiff was to perform the

duties of a woodsman, to look after the count of boxes, and attend to the cornering and chipping, and to the commissary in which he was assistant clerk. He was not required to curry the horse. It requires skill to be a woodsman. A man without experience cannot be a woodsman. It is customary for the overseer to show the man in the woods how to cut boxes. It also requires skill to know how to chip boxes after they are cut. Common laborers box, corner and chip them. The work is more physical than mental; and so as to the work of a clerk and woodsman in a commissary. Witness is not prepared to say that plaintiff did not render all the services that he said he rendered.

*Leon A. Wilson*, for plaintiffs in error.
*W. G. Brantley* and *W. M. Toomer*, contra.