### In re CONTINENTAL PAINT CO.

(District Court, N. D. New York. January 26, 1915.)

BANKRUPTCY ⟨Key⟩348—CLAIMS—PREFERENCE—"WORKMEN, CLERKS, OR SERVANTS."

The superintendent of a bankrupt's paint factory, employed at $40 per week to superintend the making of paint, though in the course of his employment he did a great deal of manual labor assisting those under him, was not a "workman or servant" so as to entitle him to priority for wages due him as superintendent under his contract, under Bankr. Act July 1, 1898, c. 541, § 64b, 30 Stat. 563, as amended by Act June 15, 1906, c. 3333, 34 Stat. 267 (Comp. St. 1913, § 9648), providing that wages due workmen, clerks, traveling or city salesmen, or servants, earned within three months before the commencement of bankruptcy proceedings, and not exceeding $300, shall be entitled to priority.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 536; Dec. Dig. ⟨Key⟩348.]

In the matter of bankruptcy proceedings of the Continental Paint Company. On petition to review a referee's determination that claimant, William E. Wilson, was entitled to allowance of his claim, but not to priority. Affirmed.

M. A. Phelps, of Syracuse, N. Y., for claimant.
James Tracy, of Syracuse, N. Y., for the trustee.

RAY, District Judge. The Continental Paint Company is a corporation. William E. Wilson was employed by it as superintendent of its factory. A written memorandum was drawn, but on account of some differences was never signed. William B. McOwen, an officer of the corporation from its incorporation in 1913, was general manager, and testified that Wilson was employed by it and had charge of the paint factory and superintended the making of the paints and the getting out of the orders and in fact did whatever was necessary around the factory. He also testified that Wilson performed manual labor in mixing the paint, helping to make the paint, and that he worked with the man who made the paint right along there. He also said that Wilson was engaged as superintendent of the factory, and, if he had had ten men under him, would have been the superintendent of the ten men, and that he was an expert paintman, etc., and was going to teach the men the formulas for making paint. Wilson was to be paid $40 a week. The man or men under him were paid $12 to $14 a week.

It would seem that this corporation was not a success, and that the work of superintendent was not very extensive, and hence Wilson took hold and did a great deal of manual labor. This fact does not change the fact that he was hired or engaged to act as superintendent at $40 per week, and that so far as there was any duty as superintendent to perform he acted as such. At the same time he did more or less manual labor. However, he was superintendent of the factory at a salary of $40 per week, and Mr. Phelps asked this question, "How

much of the salary did you draw?" The answer was, "$40 a week."
Question, "You were paid that salary up until what time?" Answer:

"I think it was paid up until February 23, 1914, and they owed me from
that date until March, 1914, which would make $140. Q. For that last three
weeks and a half you have not been paid? A. No, sir."

He then described the work he performed.

This, with other evidence, convinces me that the referee was right
in holding that Wilson was there acting for this corporation in the
capacity of superintendent, although he did a great deal of manual
labor. This he had the right to do. The fact that there was but little
work to do as superintendent does not change the fact that he was su-
perintendent and employed as such.

Section 64b of the Bankruptcy Law provides that:

"Wages due to workmen, clerks, traveling or city salesmen, or servants
which have been earned within three months before the date of the com-
mencement of proceedings, not to exceed three hundred dollars to each claim-
ant; * * * is entitled to priority."

The balance of the wages due to Wilson under his agreement of $40
per week was not wages due to a workman or servant, but to Wilson
as superintendent under his agreement.

He does not base his claim on a quantum meruit for work done as
a workman or servant, but on his agreement that he should be paid $40
per week. This agreement was based on the fact that he was to per-
form the duties of superintendent whatever they were, more or less.
Waiting for business and the employment of more men, he took hold
and did more or less manual labor. However, he was superintendent
all the time and earned his salary as such, and was entitled to it, but
is not entitled to priority of payment.

I do not see how the referee could have held otherwise than as he
did, and hence the order of the referee must be affirmed.