12789

ROBERTSON v. WISE, and four other cases

(151 S. E., 87)

*Mr. Randolph Murdaugh,* for appellant,

*Mr. H. Klugh Purdy,* for respondent,

December 17, 1929.

The opinion of the Court was delivered by MR. CHIEF JUSTICE WATTS.

The appeals in these five cases were heard together by this Court. It appears that upon circuit the *Robertson case* was tried separately from the others, and although it is not distinctly so stated in the transcript, we assume that the *Parker, Floyd, Smith* and *Phillips cases* were tried together on circuit.

The questions that arose in the *Robertson case* were:

(1) Whether he came under the terms of Section 5703, Vol. 3 (Civ. Code), Code of 1922, which provides for a lien in favor of all employees of certain industrial enterprises; and (2) whether the compensation alleged to have been promised to him at the end of the employment year was such wages or salary as came within the purview of that section.

The same questions arose in the *Parker case.*

In the other three cases the first question did not arise, the second did.

The cases were tried before his Honor, Judge Johnson, and a jury; he ruled in favor of the plaintiffs on both of the questions stated, and a verdict was rendered in each case in favor of the plaintiffs, which was confirmed by an order of his Honor directing the receiver to pay the amounts so ascertained out of the assets of the estate in his hands.

The rulings of his Honor are set forth in his order, dated August 13, 1928, which will be incorporated in the report of the case.

For the reasons stated therein the judgment in favor of each of the plaintiffs is affirmed.

MESSRS. JUSTICES BLEASE, STABLER and CARTER concur. MR. JUSTICE COTHRAN (dissenting) : I shall devote my attention to the *Robertson case;* the conclusions arrived at in reference to it will apply to the other cases.

As stated in the opinion of the Chief Justice, the questions in that case are :

1. Whether Robertson comes under the terms of Section 5703, Vol. 3, Code of 1922, which provides a lien in favor of all employees of certain industrial enterprises;

2. Whether the compensation alleged to have been promised to him at the end of the year was such wages or salary as comes within the purview of that section.

The section referred to is as follows : "All *employees* of factories, mines, mills, distilleries, and all and every kind of manufacturing establishment of this State, shall have a lien upon all the output of the factory, mine, mill, distillery or other manufacturing establishment by which they may be employed, either by the day or month, whether the contract be in writing or not to the extent of *such salary or wages as may be due and owing to them under the terms of their contract* with the employer, such lien to take precedence over any and all other liens, except the lien for municipal, State and county taxes."

The first question to be considered is what relation the plaintiff bore to the Chelsea Lumber Company. The plaintiff testified : "I was employed in a general supervisory capacity, and I also did some office work." He followed this with a statement that his job was "looking around," and in reply to the question, "And your position was really that of superintendent, was it not?" he stated, "I had charge." And another question was asked, "Was it a general supervisory job?" to

which he made reply, "I told you, I was employed for that purpose." And again: "Q. Now, Mr. Robertson, about the work down there. Let's go into details with this jury and tell them what you did, and you were employed, as you say, to superintend something down there? A. Yes, sir."

The entire line of testimony of this witness shows conclusively that he was employed in a supervisory capacity, as stated by him: "I went around to every operation each day."

His uncle E. A. Robertson, vice-president and general manager, testified:

"Q. What was his position down here? A. He was supposed to be my chief assistant.

"Q. What did you style him? A. As general superintendent.

"Q. You were the Executive Vice-President? A. Yes, sir.

"Q. And he was the general superintendent under you? A. Yes, sir."

Both sides agree, and there was no opposing testimony thereto, that the plaintiff occupied the position of a superintendent, necessarily a higher station than a simple laborer or employee.

The next question is whether one who occupies such a position is entitled to the benefit of the lien provided for in Section 5703.

While the word "employee," in a general sense, includes any one who is employed by another in any kind of service or capacity, 1·think that it was intended to be used in the act as synonymous with "laborer." The title of the act as originally passed, 22 St. at Large, p. 502, was "An Act to provide for laborer's lien"; the body of the act is exactly reproduced in Section 5703, in which the word "employees" only is used, which indicates the legislative intent that employees should mean "laborers." The act came under review in the case of *Malcomson v. Wappoo Mills* (C. C.), 86 F., 192, where it was construed to refer only to laborers and did not cover a superintendent or a bookkeeper. This of

course is not conclusive, as that construction was given prior to the adoption of the Code of 1922, which refers only to "employees"; it is, however, persuasive as to the interpretation which should be placed upon the word "employees" in Section 5703.

In *Cole v. McNeill,* 99 Ga., 250, 25 S. E., 402, the syllabus (by the Court), is as follows: "One who was employed as a 'woodsman,' and whose duties as such included overlooking and superintending a large number of ordinary hands engaged in turpentine operations, who had authority to employ and discharge these hands, who also worked in a commissary in the capacity of a clerk, and who was employed for his skill in rendering services which obviously required mental and business capacity, rather than the mere power to do manual toil, these services consisting much more largely of 'head work' than of 'hand work,' was not a laborer, entitled, under Section 1974 of the Code, to foreclose a lien as such, although, in point of fact and of necessity, he did, in the performance of his duties, a considerable amount of manual labor; and often became physically fatigued."

In *Oliver v. Macon Co.,* 98 Ga., 249, 25 S. E., 403, 58 Am. St. Rep., 300, the syllabus (by the Court), is as follows: "Primarily, a clerk in a mercantile establishment is not a 'laborer,' in the sense in which that word is used in Section 1974 of the Code, even though the proper discharge of his duties may include the performance of some amount of manual labor. If the contract of employment contemplated that the clerk's services were to consist mainly of work requiring mental skill or business capacity, and involving the exercise of his intellectual faculties, rather than work, the doing of which properly would depend upon mere physical power to perform ordinary manual labor, he would not be a laborer. If, on the other hand, the work which the contract required the clerk to do was, in the main, to be the performance of such labor as that last above indicated, he would be a laborer. In any given case, the question whether or not a

clerk is entitled, as a laborer, to enforce a summary lien against the property of his employer, must be determined with reference to its own particular facts and circumstances."

In Baldwins' Century Edition of Bouvier's Law Dictionary, under "employee," while it is said that the term is one of rather broad significance, the learned author adds : "It is not usually applied to higher officers of corporations, or to domestic servants, but to clerks, workmen, and laborers collectively."

In 20 C. J. pp. 1242–1244, it is said that the context and the connection in which the term "employee" is used must largely determine whether, in a particular case, the term includes a certain person, and that "it rarely refers to the higher officers of a corporation or government, or to domestic servants, and is usually distinguished from an official or officer, or one employed in a position of some authority." This text is supported by a number of citations, and the note quotes from one of the cases cited the following : "The officers of the company are its representatives, and, it may be said, are the official masters who direct and control the servants and employees. The former are appointed and elected, and are trustees; the latter are hired and are the subordinates of the former."

In 14a C. J. p. 1023, the text reads : "Superintendents are not employees, operatives, or laborers, within a statute giving this class preference for wages. The statute protects only such employees as perform assigned tasks requiring no oversight, management, or discretion, and who are not concerned with the general policy and management of the business. So a district manager of an insurance company is not an employee within a statute providing that where a corporation shall become insolvent, the wages of employees shall be given a preference." Numerous cases are cited thereunder to support the above quotation from the text.

In *R. Co. v. Trust Co.*, 82 Md., 535, 34 A., 778, 38 L. R. A., 97, the Court considered the question of whether or not the term "employees," in a somewhat similar statute providing for a preference, included an insurance adjuster, and in the course of the opinion uses this language: "Now, it is clear, we think, that the word 'employee,' as used in the statute was intended to have a limited meaning, and that it cannot be applied in its broadest sense or as including everyone in the service or employment of a corporation or individual. The object of the statute was to provide for the payment of the wages and salaries due a certain class of persons to whom such wages or salaries were deemed always necessary for their support and maintenance." Both for the reason thus suggested and because of the apparent unwisdom of rewarding those in control of a business which has been so conducted as to reduce it to insolvency, by the granting of a preference in favor of such claims as they may assert, it was not the intention of the Legislature to include within the provisions of the statute under consideration supervisors or superintendents occupying a position similar to that held by the plaintiff in this action who was the general superintendent of the entire operation of the Chelsea Lumber Company.

In *Salaun v. Consolidated Co.*, 143 La., 593, 78 So., 974, it was held that neither a general manager who superintended generally the operations of a corporation nor the foreman of its lumber yard was a servant of the corporation within a statute which provided a lien in favor of "servants." There is little difference between a servant and an employee.

In Matter of Stryker, 158 N. Y., 526, 53 N. E., 525, 526, 70 Am. St. Rep., 489, the Court made the following pertinent observation: "As was observed in the case of *People v. Remington,* 109 N. Y., 631 [16 N. E., 680; Id.], 45 Hun., 338, legislation of this character confers upon a class of persons having a specific contractual relation with corporations new and unusual privileges and securities at the expense of other creditors whose distributive share of the assets is di-

minished. It is in derogation of the common law, and should not be extended to cases not within the reason as well as within the words of the statute. In the distribution of the assets of an insolvent corporation by Courts of Equity, the maxim that equality is equity is a fundamental rule; and it is only by force of legislation that this principle can be departed from, and then only in favor of the class of creditors that come within the scope of the statute when fairly and reasonably interpreted. In a very recent case we were required to pass upon the claim of an attorney at law which it was contended was entitled to preference under the terms of the statute. In a general sense, it might well be said that he was an employee, since he was retained or employed in the business of the corporation; but it was held that he was not a laborer or servant within the scope or policy of the statute. *Bristor v. Smith,* 158 N. Y., 157, 53 N. E., 42."

In the case of *In re Continental Paint Co.* (D. C.), 220 F., 189, it was held that the superintendent of a paint factory was not a servant of the corporation within the terms of a lien statute.

Mr. Webster defines "employee" as follows: "One employed by another; a clerk or workman in the service of an employer usually distinguished from official or officer or one employed in a position of some authority."

Mr. Webster quotes from Woodrow Wilson: "The Act * * * may be said to cover only 'employees'; it does not affect any person really in authority though it does affect a large body of Federal servants."

In *Wells v. R. Co.* (C. C.), 1 F., 270, the syllabus is: "An act of the legislature of the State of Minnesota provided that in a foreclosure sale of a railroad the Court granting the foreclosure decree should provide in such decree or otherwise that the purchaser should 'fully pay all sums due and owing by such * * * foreclosed railroad company to any servant or employee of such company.' Held, that the

terms 'servant' and 'employee' did not include a secretary of such railroad company."

In the opinion, the Court said: "The legislature intended to provide for the unpaid wages due servants or employees; that is, operatives of the grade of servants 'who have not a different, proper and distinctive appellation, such as officers and agents of the company.' See 37 N. Y. R. and cases cited."

In *Abbott v. Lewis, 77* N. H., 94, 88 A., 98, the Court said: "The question who are meant by 'employees' in the clause giving $10,000 to be distributed among the employees of the O. J. Lewis Mercantile Company has not been argued by counsel. The word 'employê' is defined in Webster's Dictionary as 'a clerk or workman in the service of an employer, usually distinguished from *official* or *officer,* or one employed in a position of some authority.' To the same effect see the Century Dictionary. The synonyms of the word are given by Soule as 'agent, clerk, servant, hand,' apparently implying service in an inferior capacity. While any one employed by a corporation in any capacity may perhaps be considered an employê of the corporation (and if from the context such appeared to be the meaning, the officers of the corporation might be intended by the term under some circumstances), such is not the meaning of the word as ordinarily employed."

In *Helliwell v. Sweitzer,* 278 Ill., 248, 115 N. E., 810, 812, the Court said: "An employê is one who works for an employer; a person working for a salary or wage. The word is applied to any one so working, but usually only to clerks, workmen, laborers, etc., and but rarely to the higher officers of the government or corporation or to domestic servants. 3 Words and Phrases 2369."

From the testimony it is clear and undisputed that the plaintiff in this case was in no wise an ordinary laborer or employee, but was in charge of the entire plant, a general superintendent; and, under the authorities hereinbefore men-

tioned, it is clear that one holding such a position is considered as being differently situated from "laborers, servants or employees," and he is therefore not entitled to the benefit of the statute, has no right to any lien as provided for by the section of Code under consideration, and is not entitled to a lien over the lumber of the Chelsea Lumber Company.

If the superintendent of a lumber company be adjudged entitled to the lien, I can see no reason why the president or the superintendent or the secretary or the treasurer, or the cashier, each of whom is in a sense an employee of the corporation, may not be entitled thereto, and the result may be that the helmsman who has shipwrecked the vessel by his mismanagement is awarded a preference over the innocent stockholders and creditors who have lost their all.

Assuming, however, that my position in this respect cannot be sustained, the further question is presented whether the plaintiff's additional claim of $750 is such wages or salary as is contemplated in the statutory lien.

I think that the evidence unmistakably shows that the promise of $750 additional was conditioned upon the prosperity of the enterprise and the rendition of faithful service; that it was a bonus pure and simple. The letter of E. A. Robertson offering the plaintiff a position contained an offer of $200 per month, with no charge for house rent, fuel, or water; no reference to a bonus was made; this offer was accepted by the plaintiff. Later something was said about a bonus, and E. A. Robertson testified that it was conditional as above stated and that neither was the enterprise successful nor the services of the plaintiff satisfactory.

The action claiming the bonus as a part of his salary was begun in January, 1928; but in August before that, his attorney filed a claim against the company and specifically referred to the $750 as a bonus.

Repeatedly during the testimony it was brought out that certain employees received or were promised a "bonus," and it was further shown that in many instances the checks which

were given in payment of this additional compensation (for many employees were paid a bonus in 1925 and also there were certain payments made in 1926 to cover additional compensation or bonus), were plainly and clearly marked "account of bonus," showing that both the company and the employees understood that this additional compensation was a bonus; and it was not until some time during the progress of this suit that there was any claim advanced that said additional compensation should be termed "wages" instead of "bonus."

It appears in the transcript that notice was given that all bonuses would be discontinued from and after July 1, 1926 and that all employees remaining in the employment of the company after this notice would do so subject to such withdrawal. It is significant, too, that no demand was made by Robertson for the alleged additional compensation until after the corporation became insolvent and that then it was claimed as a bonus.

It is very clear to my mind that it was the intention of the Legislature to give to employees a lien on the produce which they helped or assisted in manufacturing for their wages or salaries; and these wages or salaries must necessarily have been of such a nature that the same can be definitely ascertained; such cannot be the case when a bonus is involved.

It has been held that: "A promise to pay a bonus in recognition of efficient service to all salaried employees who have been in the service for the year is a mere gratuity and not enforceable, the employees being already under a legal obligation to render an efficient service to their employer, and the year's service being merely a description of the class of employees entitled." *Russell v. H. W. Johsn-Manville Co.,* 53 Cal. App., 572, 200 P., 668.

The amount of the statutory lien is limited to compensation for work actually done at the contract rate. 39 C. J., 216.

The words "salary or wages" as used in this section certainly could mean nothing else than a definite and certain agreed amount. Anything that is uncertain and indefinite could not be classified as wages or salaries. Our own Court, in the case of *Moody v. Dudley Lumber Co.,* 138 S. C., 478, 137 S. E., 141, has held that commissions do not come within the purview of this section; and if commissions could not be embraced certainly bonuses could not be, a bonus being an even more uncertain proposition than commissions could possibly be, for the very meaning of the word, in the accepted sense and common usage, is something which may or may not be paid, dependent on varying circumstances. The very word itself sets apart and differentiates this class of remuneration from wages or salaries. The payment of a bonus at the end of the year is quite a customary happening in many businesses, and it is always understood to be an added compensation dependent on the condition of the business and the efficient services of the employee. In other words, a bonus is not such a wage or salary as would entitle a laborer or employee to the legal right to attach manufactured products; and, if this be true, then certainly in this case the statute does not give this plaintiff any preferred claim.

"Wages or salary" does not and cannot be construed to include "bonus," and there is not one iota of testimony even from the plaintiff himself to show that this was not exactly what his attorney, himself, the employees generally of the company and the officers thereof designated it a "bonus" pure and simple.

I may say that in my opinion the issues were improperly and inadequately presented to and passed upon by the Court. The original proceeding was an action at law against the corporation for an alleged balance due upon a contract of service. Pending that action another was brought in which a receiver of the insolvent corporation was appointed who assumed possession of the assets for distribution according to

472

law, subject to the liens of such creditors as had acquired them. After the appointment of a receiver the property in custodia legis could not be attached under Section 5704, Civ. Code, 1922. It was expedient therefore for the plaintiff to file his claim for the amount alleged to be due by petition in the cause in which the receiver was appointed, claiming a lien which the receiver should respect. Upon such petition, after answer by the receiver, the issues should have been determined:

(1) Whether the corporation was indebted to the petitioner as alleged; (2) whether the petitioner was such an employee as entitled him under Section 5703 to a lien upon the assets of the corporation; and (3) whether his claim was such as is contemplated by the statute.

It appears that the only issue submitted to the jury was whether the corporation was indebted to the plaintiff as alleged in his law case. I doubt therefore whether the Circuit Court after a verdict answering this issue only had jurisdiction to pass the order in question.

These considerations, in my opinion, dispose of all of the claims, the judgments as to each of which should be reversed and the complaints for special liens dismissed, without prejudice to the right of the claimants to file their claims against the insolvent corporation with the receiver.