BENDIX RADIO CORPORATION, GARNISHEE *v.*
HOY ET UX.

[No. 147, October Term, 1954.]

*Decided May 13, 1955.*

The cause was argued before BRUNE, C. J., and DELA-PLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*James C. L. Anderson* and *Francis X. O'Doherty,* with whom was *Leo G. Horney* on the brief, for appellant.

*Herbert R. O'Conor, Jr.,* and *George W. McManus, Jr.,* with whom was *Herbert R. O'Conor* on the brief, for appellees.

COLLINS, J., delivered the opinion of the Court.

This is an appeal from a judgment in the amount of $4,305.67 rendered in favor of Dr. John A. Hoy and Virginia Hoy, his wife, appellees, and against Bendix Radio Corporation, (Bendix), garnishee of Arthur E. Welch, appellant.

Sometime previous to March 31, 1954, the appellees recovered a judgment in the amount of $5,309.61 against Arthur E. Welch, who was then employed as General Sales Manager of the Television and Broadcast Receiver Division of Bendix as the result of the failure of Mr. Welch to comply with an agreement to purchase a house. On March 31, 1954, an attachment on this judgment was issued and laid in the hands of Bendix, garnishee, on April 1, 1954.

In the attachment case, interrogatories were served on the garnishee, which were answered by Mr. Leo G.

Horney, the assistant to the General Manager of Bendix
Radio Communications Division and as Divisional At-
torney for that Division. In answer to the interroga-
tories, Mr. Horney stated that on the effective date of
of the attachment, April 1, 1954, Bendix had in its hands
the amount of $146.24 due and owing to Welch as wages
for two days. After deducting the exemption of $100.00
there was paid to the Sheriff of Baltimore County, $46.24.
Accounting from that date to and including April 6,
1954, when Welch's services were terminated, Bendix
had in its hands the amount of $246.24 due as wages,
which included the $100.00 which was previously with-
held in accordance with Code, 1951, Article 9, Section
33. The answer to the interrogatories also showed that
"since the 2nd day of April, 1954, and in particular on
the 6th day of April, 1954, the Garnishee paid to Arthur
E. Welch the gross amount of $5,485.15. The amount
of $246.24 was due as wages to the said Arthur E. Welch
as set forth in the Garnishee's second answer to the
interrogatories and included the amount of $100.00 with-
held as aforesaid in accordance with the Code of Mary-
land, Article 9, Section 33 (Flack's Annotated Code).
The balance of $4,305.67 was paid by the Garnishee to
the said Arthur E. Welch as a gratuity on termination
of employment in consideration of his previous employ-
ment but was not paid as an obligation and was not paid
in accordance with any agreement or established em-
ployment benefit."

In a deposition filed in the case Mr. Horney, when asked
whether the figure of $4,305.67 was wages or salary,
answered that it was not. When asked how this figure
was computed, he answered: "Yes; as shown by other
portions of the interrogatories; Mr. Welch, like other
salaried employees, is on a month to month employment
contract. Knowing as you do the Maryland law with
respect to employment contracts, when employment is
terminated without cause, the employee is entitled to
the contractual pay for the balance of the pay period;
in this case, the balance of the month. Beyond that, the

corporation authorizes the respective general managers to make whatever financial arrangements of separation he feels is equitable under the circumstances. In the case of Mr. Welch, his previous employment as Assistant General Manager of the Television Division, and in effect, General Sales Manager, was such that he had worked exceedingly hard; and although his program which he attempted to give effect to was not successful, we, nevertheless, recognized his efforts and past performance. Had he remained here he would have been entitled to two weeks vacation for which he would have been paid while away. All of those things were considered in establishing the amount of money that our general manager agreed to pay Welch. Welch was under great expense while he was with the company. He maintained living quarters here, which he had to pay out of his own pocket. * * * He never did move his wife and child to Baltimore. He commuted almost every weekend to Long Island, which is expensive. And he maintained, of course, expensive facilities in Long Island. All of those things prompted the general manager to decide to make to Mr. Welch the payment which he did." Mr. Horney, when testifying in chief was asked whether the amount paid Welch was in fact wages and salary not due and owing at that time but which were paid as such by the company, to which he answered: "That's correct." He further stated that this payment covered the period from April 5th or 6th through the end of June. He stated on cross-examination that when he said in his deposition that the $4,305.67 was not wages or salary, he made such statement in his "capacity with the company." He later stated on cross-examination that this amount was given Welch as a gratuity. He admitted that he did not know until April 6th that Mr. Welch "was terminated." The trial judge remarked: "He [Mr. Horney] is starting to bandy words by saying on April 6th it wasn't wages. He says it was a gratuity." An undated employee's agreement signed by Welch and offered in evidence indicated that his salary was $1,585.00 per month.

Mr. Harry Russell, Jr., the payroll supervisor for Bendix, testified from the records of that company, and stated that the payment of the $4,305.67 was shown on the books of the company as salary for the months of April, May and June and the vacation allowance, and that he computed the sum on that basis, Welch receiving a flat salary of $1,585.00 per month.

Of course, the right of the attaching creditor, Dr. Hoy, to recover against the garnishee, Bendix, depends upon the subsisting rights between the garnishee and the debtor, Welch, in attachment. The test of the garnishee's liability is that he has funds, property or credits in his hands, the property of the debtor, for which the debtor would have the right to sue. The plaintiff can recover from the garnishee only by the same rights and to the same extent as the debtor could recover if he were suing the garnishee. It was said in the late case of *Cole v. Randall Park Holding Co.*, 201 Md. 616, 95 A. 2d 273: "In essence, attachment and garnishment is an action by the defendant against the garnishee for the use of the plaintiff. For this reason, the rights of the plaintiff can never rise above those of the defendant. If the defendant could not sue the garnishee in the court of the State in which the attachment is filed, the plaintiff cannot do so. 2 *Shinn on Attachment and Garnishment*, Sec. 516, p. 893; *Hodge & McLane, Attachments*, Sec. 148; *Myer v. Liv., London & Globe Ins. Co.*, 40 Md. 595." *U. S. Fid. Co. v. Williams*, 148 Md. 289, 129 A. 660; Code, (1951), Article 9, Section 29.

In the trial court Bendix contended that the payment of $4,305.67 was not wages but a gratuity paid to Welch. The trial judge understood from the testimony that Bendix formally conceded that the payment was not wages. In this Court Bendix contends that such payment was wages. The trial judge further found as follows: "Now, the point may be narrow, but it is crystal clear to me that prior, perhaps we will concede, to April 6th, there was no obligation with respect to this $4300 which Welch could enforce against Bendix, but the very day that Mr.

Foster [the manager of Bendix] said, 'Here is what we will do to you; here is what we will do for you; here is what we agree to do with you.'—immediately an obligation was created, in my judgment, which Welch could have enforced against Bendix.  Finding that to be true that it was an obligation enforceable by Welch, then at the time it was created, Dr. Hoy steps in Welch's place and becomes an obligation which he can enforce under this attachment because, it seems to me fantastic to say, 'Well, Bendix agrees to pay Welch a bonus; pay Welch this; pay Welch that.'  They didn't have to do it.  They had a consideration.  They were abolishing his position.  They were avoiding complications in that abolition, and they were paying him a consideration which created, in my judgment under these facts, a contractual obligation enforceable by Welch against Bendix at the time and at the instant Mr. Foster made the agreement, and became an enforceable obligation by Welch against Bendix, and equally so by Hoy against Bendix under the attachment, in my judgment.  It is just that simple.  Being that simple, the verdict is against the Bendix Corporation in the amount of $4,305.67."  Neither Mr. Foster nor Mr. Welch testified in the case.  There is no direct testimony as to the agreement which the trial judge found existed.  Mr. Horney in his direct testimony stated that Mr. Foster did not actually compute the final payment to Mr. Welch.  The trial judge evidently found such an agreement from the above quoted answer of Mr. Horney to the interrogatories in which Mr. Horney said merely that the respective general managers are given authority to make whatever financial arrangements of separation are found equitable under the circumstances.  As neither Mr. Foster nor Mr. Welch testified, this is not a case in which the trial judge had the opportunity of observing the demeanor of the persons whom he found had made such a contract.

In *Johnson v. Distillers Corp.*, 181 Md. 31, 28 A. 2d 606, a sales bonus plan provided that no additional work be performed by the employee other than that required

under his original contract of employment and it was not based on a valuable consideration. It expressly stated that the plan was not a contract but that the bonus was a gratuity. It was there held that such a contract could not be enforced against the employer who discontinued the bonus plan and closed the division in which the employees was working. We are unable to find here that an agreement existed between Welch and Bendix on which Welch could have sued Bendix for the sum of $4,305.67.

Code, 1951, Article 9, Section 33, provides in part: "No attachment of the wages or hire of any laborer or employee, in the hands of the employer, whether private individuals or bodies corporate, shall affect any salary or wages of the debtor which are not actually due at the date of the attachment; and the sum of one hundred dollars of such wages or hire due to any laborer or employee by any employer or corporation shall always be exempt from attachment by any process whatever." Therefore, if this amount of $4,305.67 was wages due at the date of the attachment on April 1, 1954, it was attachable. There is no evidence that such was the case. We are of opinion that the sum of $4,305.67 paid Welch on April 6, 1954, the date of the termination of his services, was wages not due on April 1, 1954, and, therefore, under the provisions of Article 9, Section 33, *supra,* was not attachable. *In Re Public Ledger,* 161 F. 2d 762, reversing 63 F. Supp. 1008, it was held that claims for severance pay were entitled to preferences as wages under the particular act under construction in that case. In *Tucker v. Tucker,* 370 Pa. 8, 87 A. 2d 650, it was said: "While technically a bonus is a sum voluntarily paid to an employee over and above his wages, it is in reality merely an additional arrangement for compensation for his services, * * *." In *Robertson v. Wise,* 153 S. C. 459, 151 S. E. 87, it was held a compensation to be received by an employee for remaining in the employ for a specified time was additional compensation and wages or salary earned by the employee within the statute providing

for a lien, and not a mere bonus. In *Gayner v. The New Orleans*, (1944), 54 F. Supp. 25, 28, the parties had entered into an agreement in 1936 in contemplation of loss of employment due to the opening of bridges for transportation of traffic. It was there held that agreed-upon dismissal benefits of ferryboat employees in San Francisco Bay were paid to the employees as wages, giving them a maritime lien on a ferryboat.

It was said in *Hickman v. Hanover*, C. C. A., 4th Cir., 33 F. 2d 873, in reference to an exemption provided in the bankruptcy act: "It is said that by the express provisions of the Bankruptcy Act, as construed by the Supreme Court in *Cohn v. Samuels, supra,* [245 U. S. 50, 38 S. Ct. 36, 62 L. Ed. 143], and other cases, the cash surrender value is not so payable. But we think this is too narrow and too literal a construction of the Maryland statute. While there are a few cases which hold that exemption statutes should be strictly construed, the better and almost universal rule is that such statutes should receive a liberal construction in favor of the debtor in order to advance the humane purpose of preserving to the unfortunate or improvident debtor or his family the means of obtaining a livelihood and prevent them from becoming a charge upon the public." The case of *Lakos v. Saliaris*, C. C. A., 4th Cir., 116 F. 2d 440, involved the question as to whether a "war bonus" paid sailors constituted wages. Judge Parker said in that case: "There can be no question but that the so-called 'war bonus' was additional wages for extra-hazardous service. It was awarded as the result of a demand for increased wages, and was paid for services rendered and for nothing else. To call a portion of such wages a 'war bonus' does not alter its essential character." In *Moore v. Heaney*, 14 Md. 558, this Court held that a five percentum commission to be paid for the erection of a building should be regarded as "wages or hire" and not being due at the time the attachment was laid was exempt from such attachment. See also *Law of Attachment, Hodge & McLane,* Section 138. In *Casualty Ins.*

*Company's Case,* 82 Md. 535, 34 A. 778, Judge McSherry said in reference to the act of 1854, amended and now Article 9, Section 33, *supra:* "The Act of 1854, creating an exemption in favor of a class of persons least able to protect themselves and largely dependent on their wages for support, was given a liberal and not a technically strict construction that might perhaps have been placed upon it." In *Shriver v. Carlin & Fulton Co.,* 155 Md. 51, 141 A. 434, it was held that the exemption provided in Article 9, Section 33, *supra,* for the wages or hire or salary of any laborer or employee includes one employed at a monthly salary as a salesman and sales manager for a corporation. In that case a question arose as to whether an allowance of $50.00 per month for traveling expenses was a part of the employee's, Fulton's, wages, salary or hire. The Court there said: "The three words 'wages,' 'salary' and 'hire,' although varying perhaps in their scope, nevertheless express one idea common to them all—compensation for personal services of some kind. And when thus used and applied to the facts of this case, it is impossible to escape the conclusion that they include the allowance of fifty dollars per month to Fulton for his traveling expenses. It certainly was not a gift, nor was it made to satisfy any obligation due Fulton by the corporation other than for services rendered by him to it. The nature of his services was such as to require certain expenditures for transportation and subsistence, without which the services could not have been rendered."

We are of opinion that the testimony offered was not sufficient to establish such an agreement between Bendix and Mr. Welch, that Mr. Welch could have recovered by a suit on such agreement from Bendix. From all the evidence in this case and from the authorities cited, it is plain that the sum of $4,305.67 was paid to Mr. Welch for services he had rendered to Bendix. Undoubtedly it was carried on Bendix' records as salary and vacation allowance. We were informed during the agrument of the case that Social Security required to be

deducted from wages, was so deducted. We are also of opinion that that sum was paid as wages not due when the attachment was laid on April 1, 1954, and was, therefore, not attachable. The judgment will be reversed.

*Judgment reversed, with costs.*