# THE J. CUEVA COMPANY *vs.* R. LANCASTER WILLIAMS AND COMPANY, INCORPORATED, GARNISHEE.

*Garnishment—Burden of Proof—Indebtedness of Garnishee.*

In the case of an attachment on judgment, there is no legal presumption against the truth of the garnishee's formal and explicit denial, in the pleadings, of liability to the judgment debtor at or since the inception of the proceeding, the burden of proving its case resting upon the attachment creditor.   p. 529

There is no presumption adverse to the garnishee by reason of its prayer for the withdrawal of the case from the jury for lack of evidence of liability on its part to the judgment debtor, or by reason of its failure to offer any testimony after the grant of such prayer.                              p. 529

An attachment on judgment, directed to the garnishment of money due the judgment defendant by the garnishee, is not maintainable on the theory of an indebtedness by the garnishee directly to the judgment creditor.                  p. 530

The judgment creditor must offer evidence legally sufficient to prove that a liability on the part of the garnishee to the judgment debtor existed when the writ was issued or the case was tried, in order to be entitled to have the issue of fact submitted to the jury.                              p. 530

*Decided April 10th, 1924.*

Appeal from the Baltimore City Court (FRANK, J.).

Attachment on judgment in favor of the J. Cueva Company against the Consolidated Pocahontas Coal Company, laid in the hands of R. Lancaster Williams and Company, Incorporated, as garnishee. From a judgment for the garnishee, the plaintiff appeals. Affirmed.

The cause was argued before THOMAS, URNER, ADKINS, OFFUTT, and DIGGES, JJ.

*Daniel R. Randall,* for the appellant.

*William D. Macmillan,* with whom were *Semmes, Bowen & Semmes* on the brief, for the appellee.

URNER, J., delivered the opinion of the Court.

An attachment issued on a judgment was laid in the hands of the appellee as garnishee of Consolidated Pocohontas Coal Company. The judgment had been obtained by the appellant on a claim against that company for commissions on sales of coal to the Government of Chile. The garnishee corporation denied that it had any funds or credits of the judgment debtor at or since the issuance of the attachment, and the only question to be determined is whether there is any legally sufficient evidence in the record to the contrary.

It was agreed by the coal company that directions for the payment of the commissions, for which the appellant subsequently recovered its judgment, should be given to the appellee as the company's bankers. That agreement was embodied in a letter from the company to the appellant dated October 23, 1920. The material portion of the letter is as follows:

> "You are advised that we will this day advise our bankers, R. L. Williams & Co., Inc., under the Chilean Government coal contract of October 22nd, 1920, to deduct and remit to you forthwith thirty cents (30c.) from sight drafts as presented upon each gross ton accepted and paid for by the Chilean Government through such banker as, if and when such sight drafts are presented and paid. No payments to be made you, however, upon tonnage which may, through cancellation of the contract or otherwise not delivered and paid for under said contract."

The promised instructions as to the payment of the commissions were given to the appellee, and were fulfilled with respect to settlements for eight steamer cargoes of coal, aggre-

gating 42,737 tons shipped to the Chilean Government from December 4, 1920, to March 7, 1921. A succeeding shipment of 6,735 tons was made and accepted, but the commissions, amounting to $2,020.50, on that shipment were not paid, and a suit against the coal company for their recovery resulted in the judgment on which the attachment in this case was issued. The judgment was rendered in February, 1923, nearly two years after the time of the shipment on account of which the commissions were claimed. The payment of the commissions was suspended because of complications arising from a claim by the coal company that the Government of Chile had committed a breach of contract by refusing to accept another shipment of coal. This was explained in a letter from the appellee to the appellant, under date of June 20, 1921, as follows:

> "We have your telegram of this morning inquiring as to when we will pay you your commission claimed under the shipment of the last cargo of coal by the Consolidated Pocohontas Coal Company to the Chilean Government. The coal company, as you no doubt know, claims that the Chilean Government has breached its contract in refusing to accept another cargo and have had their attorneys serve notice on us that they are claiming all funds in our hands and will hold us responsible for any funds paid out. We are securing advices from our counsel as to whether we are authorized to send you a check for the amount claimed by you. We believe that we will be advised that we are authorized to send you this check, when we will promptly do so. We will, we expect, be advised on this point some time during this present week."

A letter dated March 7, 1923, from the appellee to counsel for the appellant was produced. It stated in part:

> "This firm was directed by the Consolidated Pocohontas Coal Company to make payments to Cueva Company from drafts submitted to us for payment out of the funds on deposit, which we continued to do until we were advised by the coal company to cease

> making such payments. This firm has never had any
> understandings or dealings with the Cueva Company
> and, believing that the coal company would, of course,
> be the sole one to direct the disposition of this money,
> we acted accordingly."

There was testimony that a settlement was effected between the appellee and the Chilean Government, and that payment was made for the shipment of coal on account of which the unpaid commissions were earned, but there is no proof that when the attachment was issued on March 22, 1923, or when the trial below occurred on December 10, 1923, there were any moneys or credits of the judgment debtor in the hands of the garnishee.

The instructions from the coal company to the appellee as its banker, in reference to the commissions, were "to deduct and remit" thirty cents "from sight drafts as presented upon each gross ton accepted and paid for by the Chilean Government through such banker as, if and when such sight drafts are presented and paid." It is not proved that the appellee became indebted to the coal company except on account of funds which the sight drafts mentioned in those instructions produced. It may be inferred from the evidence that the appellee was still accountable for some of the funds when its letter of June 20, 1921, was written. But the appellee's financial relations with the coal company may have ended long before the writ of attachment was issued in March, 1923. There is no legal presumption against the truth of the appellee's formal and explicit denial, in the pleadings, of liability to the judgment debtor for any amount at or since the inception of this proceeding. The burden of proving its case against the garnishee rested upon the attachment creditor. 28 *C. J.* 308; 2 *R. C. L.* 852; 12 *R. C. L.* 837.

A presumption adverse to the garnishee is said to be warranted by the fact that it offered no testimony in the case. There was no occasion for it to adduce any evidence, since its prayer for the withdrawal of the case from the jury was granted. In thus exercising its right to question the legal sufficiency of the plaintiff's proof, it cannot be held to have

exposed itself to any unfavorable presumption. The case of *Arthur* v. *Morrow*, 131 Md. 67, cited upon this point by the appellant, involved an issue of fraud in regard to the release of the garnishee's indebtedness to the judgment debtor, and the salient facts of that case were materially different from those proved by the evidence here submitted.

The argument for the appellant was partly based upon the theory that there was an allocation to the appellant of funds in the hands of the appellee to the amount required for the payment of the commissions. If such a provision was made, under conditions of privity between the appellant and the appellee, a direct liability may have been thereby imposed upon the appellee for the payment of the appellant's claim. But the pending attachment is not maintainable on that theory. It is not directed to the satisfaction of an indebtedness due by the appellee to the appellant, but to the garnishment of any money due from the appellee to the defendant in the judgment on which the attachment was procured. Code, art. 9, sec. 29 ; *Arthur* v. *Morrow, supra.* It was necessary for the appellant to offer evidence legally sufficient to prove that such a liability existed when the writ was issued, or when the case was tried, in order to be entitled to have the issue of fact submitted to the jury. In the absence of any proof to that effect, the action of the trial court in directing a verdict for the garnishee must be approved.

*Judgment affirmed, with costs.*