539 A.2d 1130

**MAYOR AND CITY COUNCIL OF BALTIMORE**

v.

**William D. HOOPER, Jr., Esquire and Lentz, Hooper, Jacobs & Blevins, P.A.**

**No. 125, Sept. Term, 1987.**

Court of Appeals of Maryland.

April 12, 1988.

Harry L. Chase, Asst. City Sol. and Michael G. Raimondi, Asst. City Sol. (Neal M. Janey, City Sol. and Joseph L. Woytowitz, Chief Sol., on brief), Baltimore, for appellant.

Deborah L. Skillman, Bel Air, for appellee.

Argued before ELDRIDGE, COLE, RODOWSKY, McAULIFFE, ADKINS, BLACKWELL, JJ., and CHARLES E. ORTH, Jr., Associate Judge of the Court of Appeals of Maryland (retired), Specially Assigned.

CHARLES E. ORTH, Jr., Associate Judge (retired), Specially Assigned.

## I

For over a hundred and twenty-five years it has been the law of Maryland that

municipal corporations and their officers having money or property in their hands to which other persons are entitled are not liable to the creditors of such persons on attachment or garnishment process *unless made so by statute or charter.*

*City of Baltimore v. Comptroller,* 292 Md. 293, 296, 439 A.2d 1095 (1982), quoting 17 E. McQuillin, *Municipal Corporations* § 49.86 at 386 (3d ed. 1968) (emphasis added). *See* 1982 revised vol., § 49.86 at 355. The seminal case in this State on the matter is *Baltimore v. Root,* 8 Md. 95, 63 American Decisions 692 (1855), and attachment cases in this Court have been consistent in their adherence to the rule of *Root.* The cases were cited and summarized in the comprehensive opinion by Rodowsky, J., speaking for the Court in *City of Baltimore v. Comptroller,* 292 Md. at 301–304, 439 A.2d 1095. "[W]e read *Root* and its progeny to espouse the proposition that attachments simply are not authorized to be served on public officials [in the absence of a statute expressly authorizing such execution]." *Id.* at 304, 439 A.2d 1095. We observed:

Our cases have said that the general provisions of attachment statutes were not intended to include public officials as garnishees, and we have long held that such attachments do not lie.  * * * The historic pattern has been one of exclusion by construction in the absence of clear statutory inclusion.

*Id.* at 311, 439 A.2d 1095. The rule of *Root* was explicitly affirmed in *City of Baltimore v. Comptroller.* We capsuled our holding in that case in *Mass Transit v. Household Finance,* 292 Md. 313, 315, 439 A.2d 1104 (1982), to be that

a wage garnishment … did not reach wages of an employee of Baltimore City, in the absence of a statute authorizing such execution to be laid in the hands of a public official.

In *City of Baltimore v. Comptroller,* 292 Md. at 299, 439 A.2d 1095, we accepted *Root's* rationale for the rule, which it borrowed from *Bulkley v. Eckert,* 3 Pa. 368, 45 American Decisions 650 (1846):

Great public inconvenience would ensue if money could be thus arrested in the hands of officers, and they be made liable to all the delay, embarrassment and trouble that would ensue from being stopped in the routine of their business, compelled to appear in court, employ counsel, and answer interrogatories, as well as take care that the proceedings are regularly carried on, and bail to return duly given. If a precedent of this kind were set there seems no reason why the State or county treasurer, or other fiscal officers of the commonwealth, or of municipal bodies, may not be subjected to the levying of attachments, which has never been attempted nor supposed to come within the attachment law.

We emphasized in *Mass Transit*, 292 Md. at 316, 439 A.2d 1104, that the general rule is based upon considerations of public policy rather than the waiver of sovereign immunity. We explained:

The policy of the law which prevents the laying of attachments in the hands of public officials seeks to prevent inconvenience and the disruption of public affairs. That principle operates independently of whether governmental immunity has been waived as to the garnishee. Questions of governmental immunity, or its waiver, are concerned with whether the State, or its agencies and instrumentalities, are subject to suit and a monetary judgment on claims asserted against them. Attachments served on public officials, however, raise the issue of whether the public official is subject to the process by which the creditor seeks to collect from his debtor, where that debtor is a creditor of the public garnishee. Even if the governmental entity does not have a sovereign immunity defense to the claim of its creditor against it, that claim does not become subject to attachment at the instance of a creditor of the claim holder.

*Id.* at 316, 439 A.2d 1104. In other words, even if the General Assembly has waived the defense of governmental immunity as to [a municipality or other governmental agency], such a waiver as to suits against it would

not make it amenable to attachments issued at the direction of third parties.

*Id.* at 317, 439 A.2d 1104.

*City of Baltimore v. Comptroller* involved the State (Comptroller of the Treasury) seeking to attach the wages of a Baltimore City employee to collect on a recorded lien for delinquent retail sales taxes. *Id.* at 292 Md. at 295, 439 A.2d 1095. *Mass Transit* involved a private judgment creditor seeking to attach the wages of two State employees to collect a private debt. *Id.* at 292 Md. at 314–315, 439 A.2d 1104. In each case, invoking the rule of *Root,* we held that the attachments could not reach the wages because there was no authorizing statute. *City of Baltimore v. Comptroller* 292 Md. at 311–312, 439 A.2d 1095; *Mass Transit* 292 Md. at 317, 439 A.2d 1104.

The General Assembly got the message and responded promptly. It enacted Acts 1982, ch. 489, codified as Maryland Code (1975, 1983 Repl. Vol.) § 15–607 of the Commercial Law Article (CL), effective 1 June 1982.[1] The Act provided:

> Wages, due from or payable by the State, or a county, municipal corporation, or other political subdivision, and the public officers of the State or a county, municipal corporation, or other political subdivision to an individual, are subject to attachment process brought for the enforcement of the private legal obligations of the individu-

---

1. It is perfectly clear that in enacting chapter 489 of the Acts of 1982 the General Assembly had in mind our decisions in *City of Baltimore v. Comptroller,* 292 Md. 293, 439 A.2d 1095 (1982), and *Mass Transit v. Household Finance,* 292 Md. 313, 439 A.2d 1104 (1982). Chapter 489 evolved from SB 24 which was referred to the Senate Judicial Proceedings Committee. In the Senate Bill file on SB 24, there is a letter from the counsel of the House Judiciary Committee, under date of 22 January 1982, to a senator sponsoring the bill, enclosing copies of our opinions in *City of Baltimore v. Comptroller* and *Mass Transit.* Counsel commented that the Court of Appeals found that

> the statutory mechanism for attachment in the Commercial Law Article does not reach governmental entities. It was suggested that a statute authorizing the execution of a writ of attachment to be laid in the hands of a public official might be the answer.

al in the same manner and to the same extent as if the State, county, municipal corporation, or other political subdivision, and their respective public officers, were a private person.

## II

"The inhabitants of the City of Baltimore are a corporation, by the name of the 'Mayor and City Council of Baltimore.'" (Hereinafter Baltimore City.) Baltimore City Charter (1964 Revision, 1985 Repl. Vol.) Art. I, § 1. Among the general powers of Baltimore City is "[t]o provide for protection against fires, and to establish and to regulate all matters relating to a Fire Department." *Id.*, Art. II, § 7. The power was implemented by Art. VII, § 45 of the City Charter upon the declaration that "[t]here shall be a Fire Department...." The Fire Department is a municipal agency, *id.*, Art. I, § 2(j), of a municipal corporation, Baltimore City.

The "Fire and Police Employees' Retirement System of the City of Baltimore" (the Retirement System), managed by a Board of Trustees, was established by the Baltimore City Code (1976) Art. 22, § 29. Its purpose is to provide "retirement allowances and death benefits ... for such officers and employees ... of the Fire Department of Baltimore City [among others] as are included in the membership [of the Retirement System]...." [2]

> Any member who has acquired five (5) or more years of service and who has been determined by a claims examiner to be mentally or physically incapacitated for the further performance of the duties of the member's job classification in the employ of Baltimore City, and that such incapacity is likely to be permanent, shall be retired

---

2. The "Employees' Retirement System of the City of Baltimore" was also established by the Baltimore City Code (1976) Art. 22, § 2. Its purpose is to provide "retirement allowances, pensions and other incidental benefits ... for employees of the City of Baltimore who become members of this retirement system."

by the Board of Trustees on an ordinary disability retirement....

*Id.,* § 34(c).

Any member who has been determined by the claims examiner to be totally and permanently incapacitated for the further performance of the duties of his job classification in the employ of Baltimore City, as the result of an injury arising out of and in the course of the actual performance of duty, without wilful negligence on his part, shall be retired by the Board of Trustees on a special disability retirement.

*Id.,* § 34(e). Certain allowances are provided upon retirement for ordinary disability, *id.,* § 34(d), and upon retirement for special disability, *id.,* § 34(f).

## III

Calvin Joseph Miller was an employee of the Fire Department of Baltimore City for 18 years and had attained the rank of lieutenant. He was a member of the Fire and Police Employees' Retirement System of the City of Baltimore. Two incidents which occurred in the performance of his duties, the first in February 1982 and the second in February 1984, led to his retirement. Both of the incidents, according to the Examiner for the Retirement System, who heard Miller's claim for special disability benefits, "resulted in depression, stress, and anxiety." On 16 November 1984, the Examiner found that Miller had

clearly established by a preponderance of the evidence both medical as well as his testimony that he is mentally incapacitated to perform the duties of his job classification and that such incapacity is likely to be permanent.

The Examiner decided that Miller was eligible for "Ordinary Disability Benefits."[3] Miller was retired by the Board of

---

**3.** The Claims Examiner observed that Miller "does not qualify under the governing ordinance for Special Disability Retirement Benefits because he is not physically incapacitated." The Examiner noted, however, that the ordinance "permits the granting of Ordinary Disabil-

Trustees and began receiving the benefits as allowed by the Baltimore City Code, Art. 22, § 34(d).

## IV

In the middle of 1983, Miller employed William D. Hooper, Jr., an attorney at law admitted to practice before the Court of Appeals of Maryland, and a partner in the law firm of Lentz, Hooper, Jacobs & Blevins, P.A., to represent him with respect to marital problems besetting him. Hooper performed the appropriate services, which culminated in a divorce. He submitted a bill for his fee in the amount of $1,764.10. The fee was not paid, and in December 1985 Hooper obtained a judgment in the Maryland District Court in Harford County for the amount due. The judgment was not satisfied. In the latter part of 1986, the District Court, on Hooper's request, issued a writ for "Garnishment on Wages," pursuant to Maryland Rule "3-646," on the judgment obtained, to be served on the "Administrator of the City of Baltimore Retirement Systems." Baltimore City, as garnishee, answered *nulla bono*, and filed a motion to quash the attachment. The motion was heard in the District Court and denied. On appeal, the Circuit Court for Harford County affirmed the judgment of the District Court. We granted the petition of Baltimore City for the issuance of a writ of certiorari.

## V

The question the appeal requires us to answer is simply stated:

May Hooper, a private judgment creditor, attach the allowances payable to Miller by Baltimore City?

Here, as in *City of Baltimore v. Comptroller* and *Mass Transit*, the attachments cannot reach the allowances unless there is an authorizing statute. There is no authorizing statute. Neither public general law, nor public local law,

---

ity [Benefits] upon a finding of either physical or mental incapacity to perform the duties of the member's job classification."

nor municipal ordinance expressly permits allowances, disability income payments, or like benefits, such as are paid Miller by Baltimore City, to be attached. The Commercial Law Article, § 15–607, authorizes only that "wages" are subject to the attachment process. Therefore, the rule of *Root* prevails unless the allowances payable to Miller are "wages" within the contemplation of CL § 15–607.

It is apparent that the authorization to attach wages due from or payable by governmental entities was by way of amendment to the Commercial Law Article for reasons suggested by the counsel for the House Judiciary Committee in her letter to a senator sponsoring the bill. *See* note 1 *supra.* Counsel enclosed copies of our opinions in *City of Baltimore v. Comptroller* and *Mass Transit,* and said:

> The Court found that the inability to attach public employee wages stems not from the bar of sovereign immunity but from the scope of the attachment procedure or mechanism. That is, the statutory mechanism for attachment in the Commercial Law Article does not reach governmental entities.

Counsel concluded:

> For this reason, the amendments to SB 24 are drafted to amend the Commercial Law Article....

It follows that "wages" in CL § 15–607 has the meaning of "wages" as defined in the Commercial Law Article under subtitle 6, "Attachment of Wages." CL § 15–601(c) declares:

> "Wages" means all monetary remuneration paid to any employee for his employment.

Miller's status as an employee of the Fire Department of Baltimore City was terminated by his retirement by the Board of Trustees. Thereafter, he had no authority or obligations with respect to the Department. He had no duties to perform, and, in fact, it was determined that he no longer had the capacity to perform the functions of a fireman. The monies payable to him after his retirement were not "wages" within the meaning of CL § 15–601(c)

because they did not represent "remuneration paid to any employee for his employment." Miller was no longer employed and no longer enjoyed the status of an employee. Furthermore, the nature of the allowances paid Miller, pursuant to Art. 22, § 34(d) of the Baltimore City Code upon his retirement for ordinary disability, in no wise falls within the definition of CL § 15–601(c) so as to be subject to attachment. They are monies to be paid in an amount fixed by legislative fiat as recompense for suffering a disability. We note that a part of the allowance may represent monies paid by the beneficiary by way of contributions to the Retirement System during his employment. *Compare United States v. Williams*, 279 Md. 673, 370 A.2d 1134 (1977), in which we found that military retirement pay is "wages" within the meaning of CL § 15–601(c) due to its nature and to the conditions of its entitlement to receive it, and we held that exemptions from wage garnishment do not apply when the underlying obligation is for alimony. *Cf. Lookingbill v. Lookingbill*, 301 Md. 283, 483 A.2d 1 (1984), in which we determined that the allowance received by the husband under a disability plan constituted marital property. *Id.* at 290–291, 483 A.2d 1. We hold that the allowances payable to Miller and sought to be attached are not "wages" within the contemplation of CL § 15–607.

## VI

### (A)

■ Our determination that the allowances payable to Miller are not wages, and, thus, without the orbit of CL § 15–607, together with the lack of any other statute permitting the allowances to be subject to the attachment process, would appear to mark the end of the trail for Hooper. But he urges that by enacting § 15–607 the legislature "specifically waived sovereign immunity as it relates to the attachment process for the execution of judgments." And he posits, "[B]ecause of the enactment of this statute, all previous case law on this subject is no longer applica-

ble."[4]   It seems that Hooper was misled because in the code § 15–607 is headlined, "Waiver of Sovereign Immunity." But this phrase does not appear in SB 24 or in ch. 489, Acts 1982.   It was not a part of the legislative enactment. Maryland Code (1957, 1987 Repl. Vol.) Art. 1, § 18, prescribes:

> The captions or headlines of the several sections of this Code which are printed in bold type, and the captions or headlines of the several subsections of this Code which are printed in italics or otherwise, are intended as mere catchwords to indicate the contents of the sections and subsections.  They are not to be deemed or taken as titles of the sections and subsections, or as any part thereof; and, unless expressly so provided, they shall not be so deemed or taken when any of such sections and subsections, including the captions or headlines, are amended or reenacted.

The headline "Waiver of Sovereign Immunity" has no relevance whatsoever with respect to the intent of the legislature in enacting § 15–607.   Furthermore, it is perfectly obvious that the legislature was not concerned with sovereign immunity.   The Senate Bill file contains an analysis of SB 24.   Under the heading, "Why Necessary" is the explanation:

> The courts have refused to interpret the present statutes to permit attachment of wages paid by governmental entities.  This is not because of sovereign or governmental immunity, but because the courts have said that as a matter of "public policy," governmental entities are not subject to attachment, in order to "prevent inconvenience and the disruption of public affairs."

---

4.  Hooper states that the circuit court, "in its opinion, recognized that sovereign immunity had been abrogated by the Legislature." He urges that this conclusion by the circuit court was not "clearly erroneous."   We point out that the issue, if relevant, would be a matter of law, beyond the range of judicial discretion or judgment on the evidence.  The "clearly erroneous" rule would not be involved; the court would be either right or wrong as a matter of law.

There is no indication whatsoever either in the language of the statute or in its legislative history that the General Assembly intended specifically or implicitly to waive sovereign immunity even if it related to the attachment process for the execution of judgments, or that it intended to reject the doctrine of sovereign immunity in any respect. Hooper's assertions to the contrary are utterly without foundation.

### (B)

Hooper next pursues a sophism advanced by the circuit court. In *City of Baltimore v. Comptroller,* 292 Md. at 299, 439 A.2d 1095, we quoted with approval the rationale adopted by *Root,* 8 Md. at 101, for its general rule that governmental entities and public officials are not subject to garnishment. We have set out that rationale heretofore in this opinion. The circuit court judge repudiated the rationale in light of the enactment of § 15–607. He thought that the reason for the rule had "lost its factual basis." He asked a rhetorical question: "Is there any reason for limiting [garnishment laid on public officials] to wages as opposed to some other benefits being paid out?" He concluded: "On a factual basis, I certainly can't think of why there would be a distinction." He thought that the "legislature recognized that." Hooper grasps this view. He would have it that the legislature, by enacting Acts 1982, ch. 489 also rejected the public policy rationale of the *Root* rule, not only as to wages, but as to all other kinds of monies and property. Far from the "legislature recogniz[ing] that," it is abundantly clear it did not so intend. The legislature was concerned only with wages. The statute spoke only of wages. The analysis of the bill in the Senate Bill file under the heading, "What It Does" noted:

> The bill will permit a State or local employee's *wages* to be subject to attachment in the same way that any other employee's *wages* are subject to attachment.

(Emphasis added.) Under the heading "Why Necessary" in the bill analysis, after referring to the rule we recognized in *City of Baltimore v. Comptroller,* and *Mass Transit,* was

the statement: "The Committee saw no reason to retain this rule...." The rule in the context of our two cases pertained only to wages. The purpose of the statute, as announced in the Act, referred to "certain moneys," and those "certain moneys" in the body of the statute were confined to "wages." The validity of the *Root* rule, except as to "wages," was not one whit disturbed by the enactment of CL § 15–607. The circuit court judge was wrong, and Hooper's reliance on his view was misplaced.

## VII

Earlier in this opinion, we noted that the question to be resolved is: "May Hooper, a private judgment creditor, attach the allowances payable to Miller by Baltimore City?" The question should be kept in sharp focus. It must not be blurred by matters which loom on the periphery, such as the doctrine of sovereign immunity and the various statutes providing exemption from execution on a judgment. At first glance they appear to be on point, but when probed, they prove to be irrelevant. We have seen that Hooper chased after sovereign immunity, and we have determined that the doctrine is not involved. Here, a private person was sued and a judgment obtained against him. The question was not whether Baltimore City was subject to suit and a monetary judgment on claims asserted against it. Therefore, a question of governmental immunity or its waiver was not called into play. *Mass Transit*, 292 Md. at 316, 439 A.2d 1104.

Maryland has adopted a legislative scheme generally to exempt from garnishment, execution, attachment or other process, pension payments, benefits, and similar allowances paid under various pension systems, public and private.[5] The true question here was blurred by the District Court,

---

5. *See, for example,* the following sections of Maryland Code (1957, 1983 Repl. Vol., 1987 Cum.Supp.) Art. 73B: § 17(c) (applies to pensions paid by the State and its subdivisions); § 96(c) (Teachers' Retirement System); § 125(c) (Employees' Pension System); § 152(c) (Teachers' Pension System). *See also* Maryland Code (1957, 1985

the circuit court, and Hooper in looking to two of these legislative exemptions. The Baltimore City Code, Art. 22, § 38, provides, with respect to the Fire and Police Employees' Retirement System of the City of Baltimore, from which Miller's allowances emanated:

> The right of a person to a pension, an annuity or a retirement allowance, to the return of contributions, the pension, annuity or retirement allowance itself, any optional benefit or death benefit, or any right or benefit accrued or accruing to any person under the provisions of this subtitle, and the moneys in the various funds created by this subtitle, shall not be subject to execution, garnishment, attachment, or any other process whatsoever and shall be unassignable except [for certain deductions authorized by the retired member in writing].[6]

Maryland Code (1974, 1984 Repl. Vol.) § 11–504(b) of the Courts and Judicial Proceedings Article (CJ) designates certain "items [which] are exempt from execution on a judgment." Paragraph (2) of subsection (b) specifies as exempt

> [m]oney payable in the event of sickness, accident, injury, or death of any person, including compensation for loss of future earnings.

The paragraph explains:

> This exemption includes but is not limited to money payable on account of judgments, arbitrations, compromises, insurance, benefits, compensation, and relief.

But, paragraph (2) continues:

> Disability income benefits are not exempt if the judgment is for necessities contracted for after the disability is

---

Repl. Vol.) Art. 88B, § 31 (State Police—Pensions); Baltimore City Code (1976) Art. 22, §§ 11 and 38; Maryland Code (1974, 1984 Repl. Vol.) § 11–504(b)(2) of the Courts and Judicial Proceedings Article.

**6.** Hooper refers to § 11 of the Baltimore City Code. Section 11, although comparable to § 38, concerns the Employees' Retirement System of the City of Baltimore (*see* note 2, *supra* ) not the Fire and Police Employees' Retirement System of the City of Baltimore with which we are involved in this case.

incurred.[7]

The circuit court judge thought that the "[Baltimore City] Code provision, if applied, would bar the attachment." It appeared to him, however, that there was "a conflict between General Law and the law of Baltimore City." It was his "understanding in that context, the General Law does prevail." So he looked to CJ § 11–504(b)(2). He concluded that the District Court judge was not clearly erroneous in his determination that Miller contracted for Hooper's services after the disability was incurred, and that the District Court judge was right in concluding that those services were "necessities" in the contemplation of CJ § 11–504(b). Therefore, the judgment on the debt was "for necessities contracted for after the disability [was] incurred" and was not exempt from execution. The circuit court judge ruled accordingly.

The circuit court, as well as the District Court, and Hooper, missed the point. Whether the allowances payable to Miller were exempt or not exempt from execution on a judgment was of no matter. It is the *Root* rule, still alive and viable, except as to wages, which governs in this case, not the exemption statutes. As we have seen, there is no statute expressly authorizing the attachment here sought, and in the absence of such a statute, "attachments simply are not authorized to be served on public officials [or municipal corporations]...." *City of Baltimore v. Comptroller*, 292 Md. at 304, 439 A.2d 1095. When we decided *City of Baltimore v. Comptroller* and *Mass Transit*, CJ § 11–504(e) prescribed: "The exemptions in this section do not apply to wage attachments." Nevertheless, we applied the *Root* rule to bar the attachment, following "[t]he histor-

---

7. Prior to 1980, the exclusion from exemption from execution on a judgment which then appeared in subsection (a), paragraph (2) of § 11–504 of the Courts and Judicial Proceedings Article, Md.Code (1974), referred to "necessaries." In Acts 1980, ch. 546, "necessaries" was changed to "necessities." It remained "necessities" when Acts 1981, ch. 765 redesignated former subsection (a) as subsection (b) and rewrote paragraph (2), and it is "necessities" today. The Editor's Notes provide no clue to why the change was made.

ic pattern ... of exclusion by construction in the absence of clear statutory inclusion." *City of Baltimore v. Comptroller*, 292 Md. at 311, 439 A.2d 1095. We do not reach the questions of which exemption statute prevails, or whether the District Court judge was clearly erroneous in his judgment on the evidence as to when the disability was incurred, or if the services here constituted "necessities." We apply the *Root* rule, and under that rule the Circuit Court for Harford County erred in affirming the District Court's denial of the motion of Baltimore City to quash the writ of garnishment. We so hold.

JUDGMENT OF THE CIRCUIT COURT FOR HARFORD COUNTY REVERSED; COSTS TO BE PAID BY APPELLEES.