774 A.2d 411

**Laura J. SHANKS,**

v.

**Susan LOWE n/k/a Dolle and Kibby's Restaurant & Lounge.**

**No. 103, Sept. Term, 2000.**

Court of Appeals of Maryland.

June 25, 2001.

Stephen J. Kleeman, Baltimore, for petitioner.

Arnold R. Silbiger (Silbiger & Silbiger, P.A., on brief), Baltimore, for respondents.

Argued before BELL, C.J., and ELDRIDGE, RAKER, WILNER, CATHELL, HARRELL and BATTAGLIA, JJ.

WILNER, Judge.

The issue before us is whether tips earned by a waitress (or other person who earns tips) constitute "wages" for purposes of the Maryland wage garnishment law, Maryland Code, §§ 15–601 through 15–607 of the Commercial Law Article. Principally at issue is whether tips fall within the definition of "wages" in § 15–601(c): "all monetary remuneration paid to any employee for his employment." The District Court of Maryland, sitting in Baltimore County, and, on appeal, the Circuit Court for Baltimore County held that tips paid to the waitress directly by restaurant customers did not constitute wages under that definition and were therefore not to be included in the calculation of attachable wages for purposes of a garnishment served upon the restaurant. With one important caveat, we disagree with that conclusion.

The relevant facts are undisputed. In January, 1995, petitioner, Laura Shanks, recovered a judgment for $6,000 against Susan Dolle, in the District Court. In April, 1998, Ms. Shanks caused a wage garnishment to be issued by the District Court and served on Kibby's Restaurant & Lounge, Dolle's employer. The writ of garnishment directed Kibby's to withhold Dolle's "attachable wages" for any work week until either the judgment, interest, and other charges and costs specified in the attachment were satisfied or Kibby's was otherwise notified by the court. The writ also stated, in relevant part, that exempt from the garnishment was the greater of (1) the product of $154.50 multiplied by the number of weeks in which "the wages due were earned," or (2) 75% of "the disposable wages due." [1] The term "disposable wages" was defined to

---

**1.** The figure $154.50 was interlineated over the printed figure $145.00, for reasons that are not clear. Maryland Code, § 15–601.1(b) of the

mean "the part of wages that remain after deduction of any amount required to be withheld by law."

On June 5, 1998, Kibby's sent the writ of garnishment back to the court with a hand-written note stating that Dolle's "disposable income average per week is approx $35 $40," which fell below the allowable exemption of $154.50. Kibby's said that, if that situation changed, it would comply with the court order, but it requested that the garnishment action be dismissed. It does not appear that any further proceedings were held with respect to that garnishment and response. In November, 1998, another wage garnishment was served on Kibby's. Through her lawyer, Dolle instructed Kibby's not to garnish any of her wages because the attachable wages were less than the $154.50 exemption. Kibby's response to the writ stated that Dolle's gross wages averaged $95/week.

On February 10, 1999, petitioner filed a motion to cite Kibby's for contempt, and a show cause order was issued.[2] Kibby's moved to quash the show cause order, contending that it held no attachable wages of Dolle—no wages in excess of the allowable exemption. Kibby's acknowledged that, in addition to the money that it paid to her, Dolle earned tips, but, because those tips were paid directly to her by restaurant patrons, it denied that they constituted "wages" for purposes of the wage garnishment law. In that regard, it claimed that Kibby's only obligation to Dolle was to pay the agreed—upon

---

Commercial Law Article provides that the following are exempt from attachment: "the greater of (i)[t]he product of $145 multiplied by the number of weeks in which the wages due were earned; or (ii) 75 percent of the disposable wages due." The parties agree, however, that the $154.50 figure is correct, and, in this case, is the proper amount of allowable exemption.

**2.**   Maryland Rule 2–646(f) provides that if a wage garnishee fails to file a timely answer, the court, on motion of the creditor, may order the garnishee to show cause why the garnishee should not be held in contempt and required to pay reasonable attorney's fees and costs. The contempt sanction is presumably based on the fact that the writ of garnishment directly orders the garnishee to withhold attachable wages, to answer the writ, and to send a copy of the answer to the court, to the judgment debtor, and to the judgment creditor.

hourly wage, that it had no obligation to pay her the tips she earned directly from customers, and that, even if the tips *did* constitute attachable wages for purposes of § 15–601, Kibby's could not comply with the duty to withhold because it never had possession of them. After a hearing, the District Court found merit in Kibby's response. It quashed the show cause order and held that Kibby's was "not responsible *for the collection* of any tips paid directly to its employee...." (Emphasis added).

Petitioner appealed that decision to the Circuit Court, which affirmed, holding that, as tips were not controlled by the employer but were a form of gratuity from the customer, they did not constitute wages under § 15–601. Some greater detail regarding Dolle's gross and net earnings was revealed at the Circuit Court level through payroll and Federal tax records attached to Shanks's memorandum of law. The gross weekly wage paid by Kibby's to Dolle was truly minimal—generally around $100. That amount was at least matched, and usually exceeded, each week by the tips Dolle earned. Both Federal and Maryland tax law treat tips as taxable wages and require that the amount of tips received by an employee be reported to the employer for withholding and reporting purposes. Thus, in calculating the amount of withholding each week, Kibby's listed the amount of wages it owed, the amount of tips reported by Dolle, and the aggregate, which it designated as Taxable Wages. The amounts withheld for Federal and State income taxes and for FICA were based on that aggregate amount. After listing and subtracting those deductions, a small amount of net pay *owed by Kibby's* was left, and that was the amount actually paid to Dolle. This can be easily illustrated by looking at one representative week—that of November 27, 1998. In that week, Kibby's reported $92.44 in wages due Dolle and $153.50 in tips, for a total taxable wage of $245.94. From that amount, it deducted $29.25 in Federal taxes, $18.82 FICA, and $13.87 in State taxes, leaving a net pay, from the $92.44 it owed Dolle, of $30.50.

Kibby's never had possession of the tips paid to Dolle; she received and retained the full gross amount of those tips.

What Kibby's did, however, was to withhold from the wage that *it* owed to Dolle the Federal, State, and FICA taxes attributable to the tips, which served to reduce the net pay owing to Dolle below what it would have been had the withholdings been based solely on the amount of wage payable by Kibby's.

We granted *certiorari* to consider "whether or not the tips and [Ms. Dolle's] salary can be aggregated for purposes of applying the mandatory deductions of the Maryland Wage Garnishment Law [or][s]tated somewhat differently, [whether] the tips count as remuneration for purposes of calculating the total wages paid?"

## DISCUSSION

We described the nature and function of a garnishment proceeding in *Fico, Inc. v. Ghingher,* 287 Md. 150, 411 A.2d 430 (1980). We noted that a garnishment proceeding "is, in essence, an action by the judgment debtor for the benefit of the judgment creditor which is brought against a third party, the garnishee, *who holds assets of the judgment debtor*" and that "[t]he sole purpose of the garnishment proceeding therefore is to determine *whether the garnishee has any funds, property or credits which belong to the judgment debtor.*" *Id.* at 159, 411 A.2d at 436 (emphasis added). That principle applies as well to the garnishment of wages. *Bendix Radio Corp. v. Hoy,* 207 Md. 225, 229, 114 A.2d 45, 47 (1955). It is clear, then, that a garnishment can reach only those funds (or other property) that belong to the judgment debtor and are actually held by the garnishee at and after the time the writ of garnishment is served on the garnishee.

The argument made by Shanks, that, for purposes of the garnishment, Dolle's salary and tips must be aggregated, is susceptible to positing either that Kibby's was under some obligation actually to take possession of the tips and hold them in order to satisfy the garnishment or that Kibby's was responsible for paying over to the judgment creditor money that was never in its possession. That suggestion seemed to

concern the District Court. Clearly, that is not the case. A garnishee is under no obligation to collect anything from the judgment debtor, or anyone else, in order to satisfy a garnishment; nor is it responsible for turning over any funds or property of the judgment debtor that it does not have in its possession. It must report and, subject to allowable exemptions, withhold only property in, or coming into, its possession during the period covered by the writ.

The issue concerns only that small amount of money left over each week from the wages due by Kibby's, after it has made the deductions required by law—the $30.50 for the week of November 27—and it arises because of the exemption allowed under § 15–601.1, which, as noted, the parties agree is $154.50 per week. If, as Dolle contends, the wages subject to the garnishment are only those payable by Kibby's for the services she performs for it, the exemption would cover the entire net pay due her, and no part of that net pay would therefore be attachable. Under Shanks's view, the wages subject to garnishment are the total taxable wages, including the tips, and that, when the $154.50 is deducted from *that* amount, the net pay due by Kibby's *would* be attachable. Using the November 27 week, for example, Shanks would argue that the gross figure should be the $245.94 in total taxable wages, from which Kibby's would deduct the $61.97 for Federal and State taxes and FICA, leaving $183.97, that it would then deduct the allowable exemption of $154.50, leaving a net of $29.47. As it had in its possession $30.50 owing to Dolle, it should have paid over the $29.47 under the garnishment. Under this theory, Shanks would not be attempting to garnish any of the tips not in the possession of Kibby's, but only to count them for purposes of applying the exemption.[3]

The issue is one of statutory construction. As noted, § 15–601(c) defines "wages" as "all monetary remuneration paid to any employee for his employment." Is this limited, as Dolle

---

3. As the issue was not raised, we need not consider the status of a tip that is left on a credit card during the period that a garnishment is in effect—whether the restaurant is then in possession of that tip.

insists, to remuneration paid to an employee *by that employee's employer*, or does it include *any* remuneration paid to the employee for the employment, which, in Shanks's view, would include tips paid by the restaurant patrons? [4] On its face, the statute does not say, one way or the other, and thus we must attempt to ascertain the legislative intent. There being no relevant legislative history with respect to § 15–601(c) that we could find to guide us, we shall look at analogous statutes dealing with the treatment of tips, from which a clear and consistent pattern emerges.

■ We begin with the wage and hour laws. Maryland Code, § 3–413(1) of the Labor and Employment Article, with an exception not relevant here, requires each employer in Maryland to pay its employees the minimum wage required by the Federal Fair Labor Standards Act. The term "wage" is defined in § 3–401(e) as "all compensation that is due to an employee for employment," a definition not dissimilar to that in § 15–601(c). Section 3–419 takes specific account of tips and, as to any employee who regularly receives more than $30/month in tips, has been informed by the employer about the provisions of this section, and keeps all of the tips he or she receives, provides, in relevant part, that an employer may include, "as part of the wage of an employee to whom this section applies," an amount that the employer sets to represent the tips of the employee, up to $2.77/hour. This is consistent with the Federal law, which defines a "tipped employee" as an employee engaged in an occupation in which he or she customarily and regularly receives more than $30/month in tips (29 U.S.C. § 203(t)) and, in relevant part, calculates the required minimum wage for such an employee

---

4. There is no contention that, when a person holds two or more jobs, working independently for two or more employers, a writ of garnishment served on one employer would reach wages due by another employer, and, clearly, that is not the case. We do reject, however, the notion suggested by Dolle that she was independently employed by each patron who left her a tip. That also is not the case. She was employed by Kibby's to serve its patrons; she was not employed by the patrons themselves.

as the actual cash wage paid by the employer plus an additional amount on account of tips equal to the difference between that actual cash wage and the minimum wage required by 29 U.S.C. § 206(a)(1). *See* 29 U.S.C. § 203(m). It is these provisions that permit employers such as Kibby's to pay less than the required minimum wage to employees who regularly supplement that wage through tips. They treat tips as part of the wages received by the employee and assume, in the absence of evidence to the contrary, that the tips will make up the difference between the wage paid by the employer and the required minimum wage. Thus, for purposes of the State and Federal minimum wage laws, tips are regarded as part of wages.

Significantly, tips are included within the meaning of wages for purposes of the unemployment insurance and workers' compensation laws, each of which provide benefits based on the employee's wages. *See* Maryland Code, § 8–101(w) of the Labor and Employment Article, defining "tip" for purposes of the unemployment insurance law as compensation that an individual receives from a customer of the individual's employer while performing covered employment and is included in the statement provided by the employer under § 6053 of the Internal Revenue Code, and § 8–101(x), defining "wages" as including tips. *See also* § 9–602(a)(2)(i) of the Labor and Employment Article, including tips within the calculation of "average weekly wage" for purposes of workers' compensation benefits. Were Ms. Dolle to file a claim for either unemployment insurance or workers' compensation benefits, any benefits to which she might be entitled would be determined on the basis of the aggregate amounts she received from both Kibby's and its customers.

As noted, tips are also included within the meaning of "gross income" for Federal and State income tax purposes. *See* 26 U.S.C. § 61; 26 CFR § 1.61–1(a) and 1.61–2(a); *Cracchiola v. C.I.R.*, 643 F.2d 1383, 1384 (9th Cir.1981); *Roberts v. Commissioner of Internal Revenue*, 176 F.2d 221 (9th Cir. 1949) (tips were incident to service and constituted compensa-

tion for personal services). That is why the person receiving them must report the amounts received to his or her regular employer, for reporting and withholding purposes. *See* 26 U.S.C. § 6053(a). With exceptions not relevant here, the Federal adjusted gross income also constitutes the adjusted gross income for the purposes of the Maryland income tax. *See* Maryland Code, § 10–101(c 1) of the Tax General Article.

These statutes illustrate a consistent view by the General Assembly that, in using terms such as "wage" or "wages," it intended to include all forms of remuneration, whether or not paid directly by the employer, except to the extent specifically excluded. When it desired to limit the scope of a statute to the remuneration paid in the form of a salary or other periodic payment by an employer, it made that intent clear. *See,* for example, Maryland Code, § 10–101(c) of the Family Law Article, where, for purposes of the earnings lien law, the Legislature defined "earnings" as "(1) any form of *periodic payment* to an individual, including [ ](i) an annuity; (ii) a pension; (iii) Social Security payments; (iv) workers' compensation payments; and (v) unemployment insurance benefits; and (2) any commissions or fees paid in connection with the obligor's employment." (Emphasis added). With that definition, limited to periodic payments, the Legislature may well have excluded tips, which are paid spontaneously on an *ad hoc* basis by the employer's customers and are not periodic in nature.

We are aware of only one case in the country directly on the point now before us. In *United Guar. Res. Ins. Co. v. Dimmick,* 916 P.2d 638 (Colo.1996), the Colorado court held that tips were included within the definition of "earnings" under the Colorado garnishment statute and were to be aggregated before applying the allowable exemption. At the relevant time, the statute defined "earnings" as including "compensation paid or payable for personal services," whether denominated as wages, salary, commission, or bonus. At one time, the statute also included, as part of the list of examples, the words "or otherwise," but those words had been deleted. After the garnishment, the law was amended specifically to

include tips. On the basis of that legislative history, the court held that the statute in place at the time sufficed to include tips, pointing out that a contrary holding would present an unjustifiable unfairness to judgment creditors.

We reaffirm that, in response to a wage garnishment, an employer is not required to turn over property that is not in the employer's possession or to collect from the employee any tips that have been paid directly to the employee by the employer's customers. That is the caveat of which we spoke. We are convinced, however, that tips do constitute "monetary remuneration paid to any employee for his employment," and therefore are part of the employee's "wages" for purposes of § 15–601 of the Commercial Law Article.

Webster defines the verb form of "tip," in the context before us, as "to give a small present of money to (a waiter, porter, etc.) *for some service.*" WEBSTER'S NEW UNIVERSAL UNABRIDGED DICTIONARY (2d ed.) (emphasis added). The word "present" suggests a gift, which a tip normally is, but we may take judicial notice of the fact that tipping is not only common, but nearly universal, with respect to persons such as waiters and waitresses, and that it is usually based on a percentage of the cost of the meal that the patron finds appropriate in light of the service rendered. Although it is not contractual in nature, in the sense that the waiter/waitress has a right to its payment in some (or any) amount, both restaurant patrons and their servers expect that one will be paid, assuming that the service is satisfactory, and they both clearly regard the tip as a remuneration for the service performed.

For these reasons, we reverse the judgment of the Circuit Court and remand to that court with instructions to reverse the judgment of the District Court and remand to that court for further proceedings in accordance with the applicable statutes, Maryland Rule 2–646, and the applicable judicial construction thereof.

JUDGMENT OF CIRCUIT COURT FOR BALTIMORE COUNTY REVERSED; CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO REVERSE JUDG-

MENT OF DISTRICT COURT AND REMAND TO THAT COURT FOR FURTHER PROCEEDINGS IN ACCORDANCE WITH THIS OPINION; RESPONDENT TO PAY THE COSTS.

Dissenting Opinion by ELDRIDGE, J., in which CATHELL, and BATTAGLIA, JJ., join.

ELDRIDGE, Judge, dissenting.

I disagree with the Court's conclusion that cash tips paid directly to an employee by a customer constitute "wages" for the purpose of Maryland's wage garnishment law. Today's decision is unsound and contrary to previous opinions by this Court. For the reasons discussed below, I would affirm.

It is well-established in Maryland that "[a] garnishment proceeding is, in essence, an action by the judgment debtor for the benefit of the judgment creditor which is brought against a third party, the garnishee, who holds the assets of the judgment debtor." *Fico, Inc. v. Ghingher*, 287 Md. 150, 159, 411 A.2d 430, 436 (1980). *See, e.g., Northwestern National Ins. Co. v. William G. Wetherall, Inc.*, 267 Md. 378, 384, 298 A.2d 1, 6 (1972); *Walsh v. Lewis Swim. Pool Constr.*, 256 Md. 608, 610, 261 A.2d 475, 476 (1970); *Messall v. Suburban Trust Co.*, 244 Md. 502, 506–507, 224 A.2d 419, 421 (1966); *Cole v. Randall Park Holding Co.*, 201 Md. 616, 95 A.2d 273 (1953). The opinions of this Court have accordingly emphasized the principle that the creditor merely steps into the shoes of the debtor and can only recover to the same extent as could the debtor. Thus, in Maryland

"[t]he test of the garnishee's liability is that he has funds, property or credits in his hands, the property of the debtor, for which the debtor would have the right to sue. * * * If the [debtor] could not sue the garnishee ..., the [creditor] cannot do so."

*Bendix Radio Corp. v. Hoy*, 207 Md. 225, 229, 114 A.2d 45, 47 (1955).

In the instant case, the debtor-employee could not maintain an action against the garnishee-employer for payment of these

tips because the employer is not liable to the employee for cash tips paid directly to the employee by her customers. Under no scenario is the employer liable to the employee for cash tips which the employer never possesses or controls. Since the debtor has no right to recover from her employer cash tips paid to her directly from her customers, the judgment creditor has no right to such a recovery. Where the creditor fails "to prove that such a liability existed," there must be "a verdict for the garnishee," *J. Cueva Co. v. R. Lancaster Williams & Co.*, 145 Md. 526, 530, 125 A. 849, 851 (1924).

*Hoffman Chevrolet, Inc. v. Washington County National Savings Bank*, 297 Md. 691, 467 A.2d 758 (1983), is especially instructive on this point. In *Hoffman* this Court considered whether a check payable to the debtor from his retirement account was properly garnished from the debtor's former employer to whom the check had been mailed. The Court of Special Appeals had concluded that the check constituted a credit in the hands of the garnishee-employer belonging to the debtor and was therefore garnishable. This Court disagreed. We noted that the retirement account check did not represent any debt which the employer owed to the debtor and that the employer had no real interest in the funds. A credit, we explained, is a monetary obligation that the garnishee-employer owes to the debtor. The check, however, could not be considered a credit because "it did not represent an obligation that the garnishee owed the debtor." 297 Md. at 697, 467 A.2d at 762. Rather, the check was representative of an obligation owed by the retirement fund to the debtor. Thus, the creditor could not reach the retirement check in the hands of the debtor's former employer.

Another firmly established principle of Maryland law is that only wages actually "due" at the date of attachment are subject to garnishment. In *U.S. v. Williams*, 279 Md. 673, 678, 370 A.2d 1134, 1137 (1977), this Court explained that "wages not actually due when the attachment is laid are not subject to attachment, primarily because the employee's right to sue the garnishee has not matured." *See* Maryland Code

(1975, 1990 Repl.Vol.), § 15–601.1 of the Commercial Law Article (referring to "wages due"); § 15–602 (attachment of a judgment debtor's wages constitutes "a lien on all attachable wages that are payable at the time the attachment is served or which become payable"); § 15–603 (employer-garnishee shall withhold all attachable wages payable to the judgment debtor). Cash tips are simply never "due" or "payable" because they are money already paid to the employee directly from the customer.

Moreover, from the earliest cases, this Court has emphasized that garnishment concerns money or property which presently is, or in the future will be, *in the hands of the garnishee. See, e.g., Parkville Federal v. Maryland National Bank,* 343 Md. 412, 681 A.2d 521 (1996); *Hoffman Chev. v. Wash. Co. Nat'l Sav.,* 297 Md. 691, 467 A.2d 758 (1983); *Fico, Inc. v. Ghingher, supra,* 287 Md. at 159, 411 A.2d at 436; *Northwestern National Ins. Co. v. Wetherall, Inc., supra,* 267 Md. at 384, 298 A.2d at 5; *Walsh v. Lewis Swim. Pool Constr., supra,* 256 Md. at 610, 261 A.2d at 476; *Messall v. Suburban Trust Co., supra,* 244 Md. at 506–507, 224 A.2d at 421; *Cole v. Randall Park Holding Co., supra,* 201 Md. 616, 95 A.2d 273; *International Bedding Co. v. Terminal Warehouse Co.,* 146 Md. 479, 126 A. 902 (1924); *Nicholson v. Crook,* 56 Md. 55 (1881); *Odend'hal. v. Devlin,* 48 Md. 439 (1878); *Wilson v. Ridgely,* 46 Md. 235 (1877); *Troxall v. Applegarth,* 24 Md. 163 (1866); *B & O. Co. v. Wheeler,* 18 Md. 372 (1862). The majority cites no Maryland cases, and there are none of which I am aware, that have upheld a garnishment with regard to property that is not in the hands of the garnishee and will not come into the hands of the garnishee. Today's decision is the first to sustain a garnishment involving money or property that is not, and never will be, in the possession of the garnishee.

To support its conclusion that, in using the term "wage," the Legislature "intended to include all forms of remuneration, whether or not paid directly by the employer, except to the extent specifically excluded," the Court relies on language in several statutes not pertaining to garnishment. The Court

notes, for instance, that tips are included within the meaning of wages for the purposes of unemployment insurance and workers' compensation laws, as well as within the meaning of "gross income" for federal and state income taxes. First, I fail to understand how these statutes have any bearing on garnishment proceedings. Certainly, tips are income and, therefore, tips are expressly included in workers' compensation and income tax statutes where the purpose of those laws is to calculate a number to be used to determine the tax owed or to determine the benefit to which the person is entitled. The purpose of a garnishment proceeding, however, is plainly different. Garnishment "is a tool by which a judgment creditor can reach the assets of a judgment debtor in the hands of a third party, the garnishee." *Northwestern National Ins. Co. v. Wetherall, Inc., supra,* 267 Md. at 384, 298 A.2d at 5. The purpose of garnishment is the seizure of money or other property actually in the hands of the garnishee, and if that money or property is not there, then it cannot be garnished. Second, those statutes which expressly include tips and gratuities within the definition of wages do not support the Court's theory. To the contrary, the statutory language on which the Court relies demonstrates that the General Assembly knows how to draft a statute to include tips within the meaning of wages if it so desires.

Wages earned by an employee are considered as much a part of an employee's assets as any other property. The General Assembly, however, has enacted a statute limiting the garnishment of wages in favor of the employee. *See* § 15–601.1 of the Commercial Law Article. The exemption statute embodies a compromise to accommodate both the principle that a debtor should not abandon his or her obligations and the principle that a debtor should not be deprived of every means of obtaining life's necessities. *See generally* Robert L. Karwacki, *Attachment of Wages in Maryland,* 16 Md. L.Rev. 227 (1956) (discussing the exemption). Here, the Court circumvents the statutory exemption by creating the fiction of putting cash tips in the hands of the employer. In the Court's

view, cash tips are aggregated with an employee's regular wages before applying the statutory exemption.

The implication of the Court's fiction is troubling. Under the Court's reasoning, if an individual works two part-time jobs, for example, neither of which pays a wage rising above the exemption amount, the wages could be aggregated for the purpose of garnishment. A writ of garnishment could be served on one or more of the employers simply because the wages from both jobs are already reported by the employers as income. The majority's reasoning may encompass other situations in which funds, in the employee's possession, are aggregated with wages in the employer's hands for purposes of circumventing the exemption. This reasoning is unsound and inconsistent with the historic construction applied to the exemption statute. The Court has previously adhered to the principle that

> "[t]he statute creating an exemption in favor of a class of persons least able to protect themselves and largely dependent on their wages for the support of themselves and others dependent upon them, should be given a liberal and not a technical construction."

*Wilmer v. Mann*, 121 Md. 239, 248, 88 A. 222, 225 (1913).

Finally, "[a]s attachment proceedings are in derogation of the common law, their existence is dependent upon special provisions authorizing them." *Northwestern National Ins. Co. v. Wetherall, Inc., supra,* 267 Md. at 384, 298 A.2d at 5 citing *Killen v. American Casualty,* 231 Md. 105, 189 A.2d 103 (1963). *See Fico, Inc. v. Ghingher, supra,* 287 Md. at 158–159, 411 A.2d at 436 (court's authority in garnishment proceedings is derived from a " 'special and limited statutory power,' " quoting *Belcher v. Government Employees' Ins. Co.,* 282 Md. 718, 720, 387 A.2d 770, 772 (1978)). Accordingly, this Court has consistently refused to uphold garnishments which were not specifically authorized by statutory provisions and rules. For example, in *Mayor and City Council of Baltimore v. Hooper,* 312 Md. 378, 539 A.2d 1130 (1988), we held that, where no statute expressly subjects disability income pay-

ments owed to public employees to garnishment proceedings, the Court would not uphold the garnishment. Other cases have also refused to uphold garnishments which were not strictly in accordance with the statutes and rules. *See, e.g., Parkville Federal v. Maryland National Bank, supra,* 343 Md. 412, 681 A.2d 521; *Hoffman Chev. v. Wash. Co. Nat'l Sav., supra,* 297 Md. 691, 467 A.2d 758. *See also Brown v. Somerville,* 8 Md. 444, 460–461 (1855) (The garnishment "process seeks to dispose of a man's property without his consent, and in many cases without his knowledge, to the payment of his debts. It has always been strictly construed and required to be pursued according to the statute").

Our prior opinions are inconsistent with the majority's view that the General Assembly intended garnishable wages to include cash tips "except to the extent specifically excluded." In so holding, the majority engages in judicial legislation, rewriting the wage garnishment law to conform with its own notions of fairness. If notions of fairness justify treating cash tips, paid directly by the customer to a waitress or waiter, as garnishable wages in the hands of the employer, it is for the General Assembly, and not for this Court, to say so.

Judges CATHELL and BATTAGLIA have authorized me to state that they concur with the views expressed herein and join this dissenting opinion.